MINNEAPOLIS, ST. PAUL & SAULT STE. MARIE RY. CO. *vs.* HOME
INS. CO.

Argued Oct. 23, 1893.   Reversed Nov. 13, 1893.

Nos. 8259; 8260.

**Policy of insurance construed.**

The policy issued by defendant to plaintiff on the property of shippers construed as an insurance for the benefit of plaintiff to the extent only of its liability as carrier and warehouseman.

**Parol evidence to vary written contract.**

In an action on the policy the bills of lading fixing the liability of the plaintiff to the shippers as carrier and warehouseman are the measure of defendant's liability to the plaintiff, and cannot be varied by parol evidence. In an action to enforce rights dependent on a written contract, although the suit be between strangers to the instrument, or between a stranger and one of the parties to the contract, the rule against varying a written instrument applies. A liability incurred by the plaintiff on a collateral contract to procure insurance on the property of shippers is not a liability as carrier or warehouseman, within the meaning of the policy.

Appeal by defendant, the Home Insurance Company of New York from an order of the District Court of Hennepin County, *Seagrave Smith,* J., made March 21, 1893, denying its motion for a new trial.

Appeal also by plaintiff, the Minneapolis, St. Paul and Sault Ste. Marie Railway Company, from that part of the same order reducing the verdict from $52,673.55 to $30,136.97.

On September 5, 1891, the Insurance Company in consideration of $600 premium insured the Railway Company for three months against all direct loss or damage by fire which it might sustain, not exceeding $50,000 "on flour, corn, grain, seeds, provisions and other merchandize, excluding petroleum and its products, it being understood and agreed that the insurance under this head is to cover the liability of the Railway Company as carriers and warehousemen as well as its own property and its charges for freight or moneys paid on or charged on for which the Company is liable or may have earned while contained in its elevator situated at Gladstone, Mich." The Railway Company was doing business as a carrier of grain from Minneapolis by cars to Gladstone and sending it from there by vessels to Buffalo, N. Y. It unloaded the grain from its cars into this elevator where it remained until it could be loaded upon vessels. Several dealers at Minneapolis employed the Railway Company to carry their grain to Buffalo by this route. On November 29, 1891, the elevator and 74,054 bushels of wheat therein were casually destroyed by fire. The wheat belonged to such dealers and was worth $60,273.94. The Railway Company had earned freight by carrying it thus far and for storage in this elevator, $3,768.03, but had no other interest in the wheat. The owners had not insured this wheat. They relied upon an oral understanding with the Railway Company that it would insure it for their benefit, but the bills of lading given the shippers provided that the Railway Company should not be liable for any loss or damage to the property arising from or caused by fire, not caused by its own negligence. By the policy other insurance was permitted, to the amount of $50,000 in other insurance companies. Such insurance was made on grain while in this elevator and belonging to the Railroad Company or held by it in trust. This action was brought by the Railway Company to recover of the Home Insurance Company the sum insured. The defendant denied liability, except for one

half the freight and storage earned. The issues were tried on December 13, 1892.

At the close of the evidence the Judge instructed the jury to return a verdict for the plaintiff for the $50,000 and interest. The defendant excepted and moved for a new trial. After argument the trial Court was of opinion that defendant was liable for only one half the value of the wheat, because of the other insurance and ordered the verdict to be cut down to $30,136.97 and directed that plaintiff have judgment for that amount with interest and costs. The plaintiff appeals from that part of the order reducing its recovery and the defendant appeals from the refusal of its motion for a new trial.

*S. E. Hall, H. S. Durand, McVey & Cheshire,* for the Insurance Co.

The policy issued by this defendant insures only the liability of the railroad company. It does not insure the goods. This distinction must be kept in mind, that the other companies insured the goods and the Home Company by its policy insured the Railroad Company's liability only. *Home Ins. Co.* v. *Baltimore Warehouse Co.,* 93 U. S. 527.

What is covered by the policy must be ascertained by the words written in the policy. *Frost's D. L. & W. W. Works* v. *Millers & M. M. Ins. Co.,* 37 Minn. 300; *Burton* v. *Connecticut Mutual Life Ins. Co.,* 119 Ind. 207; *Mills* v. *Farmer's Ins. Co.,* 37 Ia. 400; *Fuller* v. *Phoenix Ins. Co.,* 61 Ia. 350; *Gillett* v. *Liverpool L. & G. Ins. Co.,* 73 Wis. 203; *Blake O. H. Co.* v. *Home Ins. Co.,* 73 Wis. 667; *King* v. *Merriman,* 38 Minn. 47.

The Court below seems to have ignored the fact that the railroad company performed its oral agreement with the shippers and did obtain insurance upon the grain at its own expense for the sum of $50,000 in the other companies.

Although the bill of lading issued and accepted exempted the carriers from liability for fire, yet the bill of lading was in no sense inconsistent with the allegations in the complaint and the proof, that the railroad company also agreed to procure insurance for the benefit of the owners. The owners had a right to accept the bill of lading and then go out and procure insurance from an

insurance company, or they could contract with the railroad company to insure. This is what they did do as the evidence shows.

The terms of the policy of the Home Insurance Company cover in express words the liability of the railroad company as carriers and warehousemen. The liability of the railroad company as established by the evidence was not as a carrier or warehouseman. Its liability to the shippers arises out of an oral contract between it and the owners of the grain to insure the grain for their benefit.

The grain in question was shipped over the plaintiff's railroad upon bills of lading, which exempted the railroad company from liability on account of fire. Parol evidence was not admissible to vary or contradict the terms of the bill of lading, and the defendant insurance company stands in the shoes of the railroad company and may make any defense in this case which the railroad company could itself have made had it been sued by the shippers. The railroad company not being liable to the shippers, this defendant is not liable to the plaintiff, because by the terms of the policy it only insured the *liability* of the plaintiff.

The effect of exchanging a small shipping receipt for a large bill is stated in *Wild* v. *Merchants D. T. Co.*, 47 Ia. 247, as follows:

"Where a common carrier upon the delivery of merchandize for transportation issued to the consignor a shipping receipt, which stated that the bill of lading would be issued upon application at a place designated therein and that the merchandize would be transported subject to the conditions expressed in the bill of lading, held that the bill of lading and not the shipping receipt embodied the contract of the parties and that the consignee would be bound by the conditions expressed in such bill of lading.

A warehouseman is only liable for his own negligence. There can be no pretense here that plaintiff is liable simply as a warehouseman, because there is no pretense that the fire was caused by the negligence of plaintiff. *Aldrich* v. *Boston & W. R. Co.*, 100 Mass. 31; *Rice* v. *Nixon*, 97 Ind. 97; *Claflin* v. *Meyer*, 75 N. Y. 260; *Willet* v. *Rich*, 142 Mass. 356.

*A. H. Bright* and *Kitchel, Cohen & Shaw*, for the Railway Co.

The contract as established by the parol evidence was a contract under the common law liability of carriers to carry the grain to

Gladstone, and thence deliver it through its elevator upon the vessel of the next water carrier at Gladstone. It was not an agreement to insure, but an agreement at common law to deliver to the next connecting carrier. The oral evidence was properly received. The rule that parol evidence is inadmissible to vary the terms of a written instrument is applied only in suits between the parties to the instrument, or their privies, and not to suits where the issue is between one of the parties to the instrument and a third person. *Van Eman* v. *Stanchfield*, 10 Minn. 255; *Sanborn* v. *Sturtevant*, 17 Minn. 200; *National C. & L. Builder* v. *Cyclone S. S. P. Co.*, 49 Minn. 125; *Buxton* v. *Beal*, 49 Minn. 230; *Clerihew* v. *West Side Bank*, 50 Minn. 538; *Lee* v. *Adsit*, 37 N. Y. 78; *McMasters* v. *President Ins. Co. of N. Am.*, 55 N. Y. 222; *Lowell Manuf'g Co.* v. *Safeguard Fire Ins. Co.*, 88 N. Y. 591.

The plaintiff was not a warehouseman with reference to the grain. The answer admits that plaintiff was the owner of the elevator at Gladstone and that it was used by the plaintiff in its business as a common carrier.

If the Railway Company be held liable for the grain in the elevator as a common carrier, then in the absence of proof as to the origin of the fire, defendant was liable for the grain destroyed in the elevator and is within the terms of the policy as interpreted by the defendant.

There can be no contribution between "in trust" policies and policies insuring liability. *North British & M. Ins. Co.* v. *London & L. & G. Ins. Co.*, 5 Ch. Div. 569; *Lowell Manuf'g Co.* v. *Safeguard Ins. Co.*, 88 N. Y. 591.

The insurance of the defendant covered the ultimate liability, and it must alone bear the loss to the amount of its policy.

MITCHELL, J. By the policy in suit the defendant insured the plaintiff "on flour, corn, grain, seeds, provisions, and other merchandise, excluding petroleum or its products; it being understood and agreed that the insurance under this head is to cover the liability of the insured as carriers and warehousemen, as well as their own property, * * * while contained in their elevator situated at Gladstone, Mich." It is too plain to admit of argument that, as to the property of others intrusted to its custody, this was not an

insurance for the benefit of the shippers, but for the benefit of the plaintiff exclusively, and only to the extent of its own interest. It is well settled that, if the carrier would insure for the benefit of the owners of the property, this must appear from the use of apt terms in the policy to that effect. There is not a word in this policy that indicates any intent to insure any other interest than that of the plaintiff to the extent of its liability as carrier and warehouseman.

It necessarily follows that to entitle plaintiff to recover it was incumbent on it to prove that it was liable as carrier or warehouseman to the owners for the loss of the grain destroyed by fire in its elevator at Gladstone.

Recognizing this fact, the plaintiff alleged in its complaint agreements between itself and the several shippers that it would procure at its own expense policies of insurance on their grain against loss by the fire while in this elevator. Upon the trial the plaintiff itself introduced the bills of lading issued by it to the several shippers, by the terms of which it was expressly provided that plaintiff should not be liable for any loss of or damage to the property by fire not caused by its negligence or that of its agents. It may be here stated that the grain was consigned to Buffalo, and was destroyed by fire while in the elevator at Gladstone, awaiting delivery by plaintiff to the next succeeding line of carriers. The plaintiff was then permitted, against the objection and exception of the defendant, to introduce parol evidence of an agreement between itself and the shippers, made at or prior to the shipment of the grain, and prior to the execution of the bills of lading referred to, that it would procure insurance on the grain as alleged in the complaint. Even if this evidence was otherwise competent, it was inadmissible for the reason that it did not tend to prove any liability of plaintiff as carrier or warehouseman, which was all against which the defendant had insured it. But to this point we shall refer hereafter.

One ground on which counsel seek to sustain the admissibility of this oral evidence is that the rule against varying a written contract by parol applies only to controversies between parties to the instrument and their privies, and not to controversies between strangers to the contract, or between one of the parties to the instrument and a stranger to it. The rule is as stated, with this

limitation, however: that the right in the latter class of cases to vary a written contract by parol is limited to rights independent of the instrument.    As to rights which originate in the relation established by the written contract, or are founded upon it, the rule against varying it by parol applies.    Browne, Parol Ev. § 28; *Sayre* v. *Burdick*, 47 Minn. 367, (50 N. W. Rep. 245;) *Wodock* v. *Robinson*, 148 Pa. St. 503, (24 Atl. Rep. 73.)

In the present case plaintiff is claiming under this policy rights wholly dependent upon its liability to the shippers of the grain. That liability is at once both the basis and the measure of defendant's liability; and it would be most unreasonable that it should be allowed, as against defendant, to establish that liability by proof of oral promises to the shippers which the latter could not prove against it.    If the bill of lading is conclusive between the shippers and the plaintiff, it must be equally so, in this case, between the plaintiff and the defendant.

Counsel further claims that this parol evidence was also admissible as showing that the bills of lading were in fact never accepted as the contract between the parties; in other words, as we understand counsel, they propose to throw aside the bills of lading as never having become operative, ignore the express oral agreement to insure, and then rest their case upon an alleged oral contract of carriage, in which there were no exceptions to the common-law liability of carriers.    With all due respect to counsel, it seems to us that this contention is entirely baseless.

The complaint was framed, and the case tried throughout upon the theory that the liability of plaintiff to the shippers grew out of the express agreement of the former to insure the grain, and the record contains nothing even suggestive of the present contention of counsel.

The evidence furnishes no support to this contention.

The undisputed facts are that the manner in which the business was done was that, immediately upon loading a car, a short bill, or, as it is called, a "shipping receipt," was issued to the owner, and, when a sufficient number of cars had been loaded to constitute a "shipment," the shipper surrendered these receipts to the plaintiff, and received in their place a regular or large bill of lading, of the form already described, to which was attached a list of all the

cars in the shipment. These bills of lading the shippers attached to the drafts drawn on the consignees. This had been the customary and uniform manner of doing business between the parties for years. These large bills of lading had always been accepted and used by the shippers without objection. This conclusively proves that the owners perfectly understood, when shipping the grain, that these large bills of lading, and neither their preliminary talks nor the small "shipping receipts," were to be the final repository and sole evidence of the contract between themselves and the plaintiff. In the absence of fraud or mistake, of which there is no claim, the bills of lading must be conclusively presumed to be the final and complete expression of the engagements of the parties; certainly, at least, of the obligations and liabilities of the plaintiff as carrier or warehouseman in the transportation of the property.

Whether, as between the shippers and the plaintiff, the former could show by parol, as a collateral agreement, an undertaking to procure insurance on the grain, it is unnecessary to consider, for under such an agreement the liability of the plaintiff would not be as carrier or warehouseman, against which alone the defendant insured. The undertaking of the defendant to insure the plaintiff against its liability as carrier and warehouseman can have but one meaning, viz. the liability growing out of the relation of carrier and warehouseman as such. It was never intended to cover liabilities which the plaintiff might incur by virtue of special contracts as to matters entirely outside of their common-law liability as carriers and warehousemen. It is no part of the duty of common carriers to procure insurance on property intrusted to their custody for the benefit of the owners. Had this plaintiff, in order to secure the business of these shippers, guarantied them a certain profit on their grain, or the receipt of a certain price for it after its arrival at Buffalo, there would have been as much reason for claiming that the liability thus incurred was covered by this policy as that incurred by the agreement to procure insurance on it. Counsel are not correct in saying that the liability incurred by the agreement to procure insurance is nothing more than the unqualified common-law liability of a carrier. Suppose, for example, the plaintiff had, in the exercise of ordinary diligence, secured policies of insurance on this grain, and some of the insurance companies had become in-

solvent.    The plaintiff would not have been liable on its contract to procure insurance, but it might have been liable as carrier. Again, suppose plaintiff had failed to procure insurance, and the grain had been destroyed from some cause for which a common carrier is not liable, it would nevertheless have been liable for its failure to perform its contract to procure insurance.    But further discussion is unnecessary.    The policy was never intended to cover liabilities which the plaintiff might incur regarding the property by special contracts entirely outside of and foreign to its common-law duties as carrier or warehouseman.    It may be added that there is no claim that the loss was caused by the negligence of the plaintiff, and hence not within the operation of the stipulation in the policy exempting it from liability for loss by fire.    Under no view of the case can the plaintiff recover.

On defendant's appeal the order appealed from is reversed.    On plaintiff's appeal that part of the order appealed from is affirmed.

(Opinion published 56 N. W. Rep. 815.)

Application for reargument denied December 20, 1893.