MINNEAPOLIS, ST. PAUL & SAULT STE. MARIE RAILWAY COMPANY v. HOME INSURANCE COMPANY.[1]

| 64 | 61 |
|----|-----|
| s71 | 299 |
| 64 | 61 |
| f75 | 543 |

February 6, 1896.

Nos. 9482—(78).

**Appeal—Assignment of Errors—Amendment.**
The assignment of errors cannot be amended by the appellant, after his time for serving them has passed, without the consent of the respondent or leave of the court.

**Same—Order Allowing Amendment of Complaint.**
An order allowing an amendment of the complaint, made before the trial, and not as a part of it, cannot be reviewed on appeal from an order denying a motion for a new trial. City of Winona v. Minnesota R. Const. Co., 27 Minn. 415, followed.

**Fire Insurance—Grain in Elevator of Carrier—Negligence of Carrier—Liability of Insurer.**
This action is upon a contract by defendant to insure the plaintiff, a common carrier, to the extent of its liability as such, for loss by fire on grain in its elevator at its terminal station. The complaint set out the contract; also, a common-law contract of carriage of the grain of certain shippers, with the obligation to safely deliver it, at such station, to the connecting carrier; that while it was awaiting, in such elevator, such delivery, in the usual course of its carriage, the grain was lost by fire; and that the plaintiff had paid the shippers therefor,—but did not in express terms allege

---

[1] Reported in 66 N. W. 132.

that the fire was due to the negligence of the carrier. *Held*, that the complaint stated a cause of action.

### Same—Pleading—Departure.

The answer alleged that the contract of carriage was evidenced by a bill of lading containing stipulations modifying the plaintiff's common-law liability, and that the fire was not due to its negligence. The reply admitted the bill of lading, and affirmatively alleged that the fire was caused by plaintiff's negligence. *Held*, that the reply was not a departure in pleading.

### Carrier—Insurance against Negligence.

*Held*, that the carrier may lawfully insure against liability for loss of goods carried, though occasioned by the negligence of his own servants.

### Findings Sustained.

Evidence considered, and *held* to sustain the findings of the court, to the effect that the fire which caused the loss of the grain was due to the negligence of the plaintiff, and that the defendant waived the furnishing of the proofs of loss within the time limited by its policy.

### Insurance by Carrier—Other Insurance—Adjustment.

The plaintiff had other insurance on the grain, payable to itself, for the benefit of the shippers, in a sum equal to the amount named in the defendant's policy, which provided that the defendant should not be liable for a greater proportion of any loss than the amount insured should bear to the whole insurance. The trial court held the defendant liable for one-half of the loss. *Held*, that the court committed no error, as against the defendant.

Appeal by defendant from an order of the district court for Hennepin county, Smith, J., denying a motion for further findings of fact and conclusions of law, and denying a motion for a new trial. Affirmed.

*S. E. Hall* and *McVey & Cheshire*, for appellant.

*Alfred H. Bright* and *Kitchel, Cohen & Shaw*, for respondent.

START, C. J. This is an action upon the insurance policy construed by this court in its decision, on a former appeal in this case, reported in 55 Minn. 236, 56 N. W. 815. After the cause was remitted to the district court, and before a new trial was had, the plaintiff, by order of the court, was permitted to amend its complaint. The cause was tried by the court without a jury, resulting in findings of fact and conclusions of law, in favor of the plaintiff, to the effect that it was entitled to recover of the defendant the sum of $28,607.28. From an order denying its motion for a new trial the defendant appealed.

1. The 50 proposed additional assignments of error, presented by the appellant on the hearing of the case, and objected to by the respondent, must be disregarded; for the appellant cannot, without leave of the court, or consent of respondent, amend his assignments of error after his time for serving them has passed. The case must be disposed of upon the original assignments. Greene v. Dwyer, 33 Minn. 403, 23 N. W. 546.

The defendant's first alleged error is that the court erred in permitting the plaintiff to amend its complaint. The order allowing the amendment was made previous to the trial, and not as a part of it, and it cannot be reviewed on this appeal, which is from an order refusing a new trial. City of Winona v. Minnesota Ry. Const. Co., 27 Minn. 415, 6 N. W. 795, and 8 N. W. 148. The remedy is an appeal from the judgment. City of Winona v. Minnesota R. Const. Co., 29 Minn. 68, 11 N. W. 228.

2. The next error claimed is that the court erred in holding that the amended complaint stated a cause of action, for the reason that the only ground of recovery by the plaintiff, if any there be, is omitted from the complaint, and stated for the first time in the reply, which is a departure.

We are unable to discover, from an examination of the record, that the trial court was ever requested to, or did, pass upon the proposition that the complaint did not state a cause of action. Where the objection that the complaint does not state a cause of action is raised in this court for the first time, it should not be allowed to prevail, if the complaint can be sustained by any reasonable intendment. We are of the opinion that the complaint does state facts constituting a cause of action, and that the claim that the reply is a departure is equally untenable.

It is claimed, however, by defendant, that the decision of the court on the former appeal is not only conclusive in its favor upon this question of pleading, but also upon its claim, hereinafter to be considered, that the bills of lading, made a part of its answer, with all their provisions, conditions, and exemptions, are valid and binding upon the parties, and that in no view of the case can the plaintiff maintain this action. It will simplify a decision of this appeal if, at the outset, we settle just what was decided by the court on the former appeal.

The cause of action attempted to be alleged in the original complaint was based upon the same insurance policy as the one upon which the cause of action alleged in the amended complaint rests. But the original complaint was framed upon the theory that the plaintiff's liability to shippers for the grain destroyed by fire while in its elevator at Gladstone, Michigan, depended upon a collateral agreement with the shippers to insure the grain, and that such liability to them was covered by the policy. On the first trial of the case the plaintiff was permitted to prove such contract by parol evidence. The first question for the consideration of the court on the former appeal was a construction of the terms of the policy, and it was decided that the policy only insured the plaintiff to the extent of its liability as a carrier and warehouseman to the owners of the grain in its elevator lost by fire. The only other question was whether such liability included the liability of the plaintiff to its shippers, by virtue of its contract with them to insure the grain for their benefit, and it was held that it did not. Hence, the collateral contract so to insure was wholly immaterial, even if it was competent to prove it by parol.

These were the only questions involved, and what is said in the opinion as to the admissibility of parol evidence to prove the collateral contract, though abstractly correct, was unnecessary to a decision of the case. The question of the validity of the conditions and exemptions in the bills of lading was neither involved in the case, as it then stood, nor decided. The statement of the court, at the conclusion of the opinion, that "under no view of the case can the plaintiff recover," had reference only to the record of the case then before the court, and to the claim of the plaintiff, made in its complaint as it then stood, that its liability to its shippers, by virtue of its contract with them, was covered by the policy, and constituted its cause of action. The decision of the former appeal, to the effect that the policy covered only the liability of the plaintiff as a carrier and warehouseman for the grain of its shippers destroyed by fire while it was in the elevator, and that such liability did not include plaintiff's liability to shippers under its contract to insure, is the law of this case, and concludes the parties as to the liability covered by the policy; but, other than this,

it has absolutely nothing to do with the questions involved in the present appeal.

All that is necessary, in connection with this statement as to the scope of the former decision, to support our conclusion that the amended complaint states a cause of action, and that the reply is not a departure, is a brief analysis of the pleadings.

The amended complaint alleges that the plaintiff is a common carrier operating a line of railway from the city of Minneapolis, this state, through the state of Wisconsin to the port of Gladstone, in the state of Michigan, where it owned and used a grain elevator for transferring wheat and other grain from its railway to vessels, and for storing the same while waiting to be delivered to such vessels in the usual course of carriage from the port of Gladstone to other lake ports; that the defendant duly executed to it the insurance policy in question, a copy of which is made a part of the complaint; that the plaintiff received, at Minneapolis, from certain owners and shippers a given number of bushels of wheat for carriage over its railway to Gladstone, and thence by water to Buffalo, by any lake carrier whose vessels should first call for it at Gladstone, and agreed with each of such owners to carry his wheat by its railway from Minneapolis to Gladstone, and there safely deliver it, for carriage, to the lake carrier whose vessels should first call for it; that on November 29, 1891, and during the life of the policy, the wheat was in the elevator, waiting, in the usual course of carriage, for delivery by plaintiff, in accordance with its agreement, to the lake carrier, and was on that day destroyed or damaged by fire to the extent of $57,214.57; and that the plaintiff has paid the owners of the wheat the damages sustained by them by the loss of the wheat by fire. The complaint also alleges that the plaintiff made and served due proofs of its loss under the policy, and complied with its conditions in this respect. There are other allegations showing that the contract of carriage was one of interstate commerce, and that the provisions of the law relating thereto had been complied with; but, in the view which we take of this case, these last allegations are not material.

The reason assigned by the defendant why the complaint does not state a cause of action is that it contains no allegation that

the plaintiff was guilty of any negligence in reference to the fire which caused the loss. But the complaint sets out a common-law contract of carriage, with an obligation to safely deliver the wheat to a connecting carrier, and a breach of such contract, and the loss of the wheat by fire, while awaiting such delivery, in the plaintiff's elevator. In an action against the plaintiff by the shippers, proof of these facts would establish a prima facie right to recover; for proof of the loss of the wheat while in the possession of the carrier raises the presumption that it was negligent, and the burden is upon it to show, if it claims that the contract for carriage was a qualified one, exempting it from its strict common-law liability, that the cause of the loss was within the terms of the exemption, and that it was not due to its negligence. Shriver v. Sioux City & St. P. R. Co., 24 Minn. 506; Lindsley v. Chicago, M. & St. P. R. Co., 36 Minn. 539, 33 N. W. 7; Shea v. Minneapolis, St. P. & S. Ste. M. R. Co., 63 Minn. 228, 65 N. W. 458. The complaint, then, sets forth facts showing the liability of the plaintiff as a carrier to the shipper for the loss of the grain. This brings the case within the terms of the policy, and therefore the complaint states a cause of action.

The answer admits that the plaintiff entered into contracts of carriage with the shippers, but alleges that the contracts were evidenced by bills of lading, which are made a part of the answer, and contain restrictions and exemptions limiting the plaintiff's common-law liability as a carrier. After a statement of these restrictions in the bills of lading, and that there was a consideration for them, the answer alleges that the plaintiff was not guilty of negligence in causing the fire which destroyed the grain, and that the plaintiff was not liable therefor to the owners of the grain as a carrier or warehouseman.

The reply denied that there was no negligence of the plaintiff in the premises, and also alleged, affirmatively, that the fire was caused by the negligence of its foreman of the elevator, setting up the facts constituting such negligence.

These allegations as to the plaintiff's negligence are claimed by the defendant to be a departure, and an attempt to set up in the reply, for the first time, a cause of action. The claim is not defensible. The complaint states facts showing the plaintiff's liability for a breach of a common-law contract of carriage. The an-

swer confesses, and seeks to avoid, this contract by alleging that, for a consideration moving to the shippers, the common-law liability of the plaintiff was restricted by exemptions in the bills of lading, and that the plaintiff was free from negligence in the premises. The reply simply meets the new matter, alleged in the answer, as to the absence of any negligence on the part of the plaintiff, by a denial and an affirmative allegation of its negligence in the premises. This was not a departure. Rosby v. St. Paul, M. & M. Ry. Co., 37 Minn. 171, 33 N. W. 698.

3. The trial court found the allegations of the complaint true, and also that the plaintiff executed and delivered to the shippers and owners of the grain bills of lading as alleged in the answer, which were accepted by them.

The court further found that each bill of lading contained, among others, the following conditions and restrictions: "It being distinctly understood that this railway company shall not be liable as a common carrier for said goods while at any of their stations awaiting delivery to connecting carrier, but shall be liable only as a warehouseman." "There shall be a complete delivery of the grain, if delivered at an elevator where delivery is made of the largest shipment of grain, or where it is made to be transshipped." "Whenever any property shall arrive at the depot or place of delivery of the terminal carrier, at the place at which it is above agreed to be delivered, its carriage shall be complete." "That said grain, twenty-four hours after arrival, shall be held at the sole risk of the shipper; and that the plaintiff should not be liable on account of the fire unless the same shall affirmatively and without presumption be proven to have been caused by the negligence of the person, party, or vessel sought to be made liable."

The court also found, in this connection, that there was no consideration for the limiting of the common-law liability of the plaintiff in the bills of lading; that the plaintiff did deliver the grain, prior to the fire, to its elevator at Gladstone, to be transshipped; that it had been in the elevator 24 hours prior to the fire, but that "the plaintiff had not, at the time said elevator was destroyed by fire, notified the shippers or the consignees of said wheat of the arrival of the same at Gladstone; that no vessel or boat had arrived at Gladstone, which could have taken said wheat from there to Buf-

falo, from the time of the first arrival of said wheat on the plaintiff's cars and the time of the burning of said elevator." It is further found, as a fact, by the court, that the fire which destroyed the elevator and the grain in question was caused by the negligence of the plaintiff's servants in charge of the elevator.

It is claimed by the defendant, in effect, that the bills of lading exempt the plaintiff from loss of the grain by fire, even if caused by its negligence, when in its possession as a warehouseman, and that it was holding the grain as a warehouseman when it was destroyed. There is nothing in the bills of lading that can be reasonably construed as exempting the plaintiff, as a warehouseman, from liability for losses due to its negligence, and, of course, as a carrier it could not do so. Therefore, if the finding of the court that the fire and consequent loss of the grain was due to the negligence of the plaintiff is sustained, it is immaterial whether the plaintiff was then holding the grain as a carrier or a warehouseman, for, in either event, it would be liable for the loss.

We have considered the evidence, and find that it fully sustains the finding of the trial court that the fire was caused by the negligence of the plaintiff's servants. The defendant insured the plaintiff to the extent of its liability as a carrier and warehouseman to the shippers of the grain in the elevator lost by fire, and the plaintiff must show, in this action, that it was thus liable to the shippers; and, in doing so, it stands in their place, while the defendant stands in that of the railway company. Now, in an action by the shippers against the railway company, a finding of the court that the loss was due to the negligence of the company or its servants would, as a matter of law, be a conclusive answer to all of the subtle conditions, exemptions, and restrictions in the bills of lading, and establish the liability of the railway company as a carrier or warehouseman to the shippers, and we have no occasion to pass upon the question of their validity. In like manner this finding of the court establishes, in this case, the liability of the plaintiff, as a carrier and warehouseman, to the shippers for the loss, and brings the case within the terms of the policy.

4. The defendant asserts that it is contrary to public policy to permit the plaintiff to indemnify itself by a contract of insurance

against its own negligence, and to plead and prove it as a ground of recovery.

The plaintiff is a corporation, and the negligence of a corporation must always be that of some agent or servant, and there can be no reasons of public policy why corporations ought not to be permitted to insure against liability due to such negligence. Such insurance by a carrier does not lessen its own responsibility, but rather increases its means of meeting the responsibility. A carrier may lawfully insure against liability for loss of goods carried, though occasioned by the negligence of its own servants. Phœnix Ins. Co. v. Erie & W. Transp. Co., 117 U. S. 312, 6 Sup. Ct. 750, 1176; California Ins. Co. v. Union Compress Co., 133 U. S. 387, 10 Sup. Ct. 365. Such a contract of insurance being valid, it follows that a breach thereof may be established by pleading and proving a liability of the carrier to the shipper for losses due to the negligence of the carrier's servants.

5. A recovery in this case is resisted on the further ground that no proofs of loss were served on the defendant within the 60 days, as provided by the policy.

The trial court found that proofs of loss were made and delivered within the 60 days to Gale & Co., the agents of the defendant at Minneapolis who procured the insurance; that such agents retained the proofs until one day after the expiration of the 60 days, and then forwarded them by mail to Durand, the chief adjuster of losses for the defendant, who had charge of the adjustment of the losses caused by this fire; that the proofs were received and retained by the adjuster, without objection that they were not served or received in time, until after the commencement of this action; "and that there was a waiver on the part of the defendant, if the statement of loss was not received by it except by its agents Gale & Co. and Durand, as aforesaid, within the 60 days, of any omission on the part of the plaintiff in not sending it direct to the company within that time."

The court does not find that Gale & Co. were authorized to receive for the defendant the proofs. The evidence, however, would justify, if not require, such a finding, as it shows that they were something more than mere local agents, and that they had been, prior to this loss, accustomed to receive proofs of loss with the ap-

proval of the defendant, and that it was customary to refer small losses to them for adjustment. The finding of the court is to the effect that, if Gale & Co. were not authorized to receive the proofs of loss, the service of them was waived by the defendant. This finding is well sustained by the evidence, for it shows that the proofs were retained by the chief adjuster without objection that they were not received in time, and that the defendant denied any liability under the policy within the time for the service of proofs of loss.

The evidence does not justify the claim of the defendant that a magistrate's certificate as to the loss was demanded and refused.

6. It is alleged in the answer, and the court so found, that the plaintiff had other insurance upon the property destroyed, payable to itself, as trustee, for the benefit of the shippers, in the aggregate amount of $50,000, making its total insurance, including the defendant's $50,000 policy, $100,000. The defendant's policy provided that it should not be liable under its policy for a greater proportion of any loss than the amount insured should bear to the whole insurance. The amount of the defendant's policy was one-half of the whole insurance, and the court ordered judgment against the defendant for one-half only of the loss.

The defendant claims that this was error, for the reason that the total amount of the other insurance should be deducted from the amount of the loss, and that it is liable, if at all, only for the balance. The reason assigned for this claim is that it insured the plaintiff only to the extent of its liability as a carrier or warehouseman, and, the plaintiff having insured the grain lost for the benefit of the shippers to the extent of $50,000 in the other companies, its liability to the shippers as a carrier was then just that much less. But while such other insurance may give to the shippers cumulative indemnity, yet it in no other way affects the liability of the plaintiff as a carrier to them for the loss of their grain. The liability of the defendant to the plaintiff is coextensive with the latter's liability as a carrier to the shippers, not exceeding $50,000. The decision of the court in treating the other companies as co-insurers was as favorable to the defendant as it had any right to demand, and was strictly in accordance with the claim made in its answer.

Order affirmed.