HOME INSURANCE COMPANY OF NEW YORK v. MINNEAPOLIS, ST. PAUL & SAULT STE. MARIE RAILWAY COMPANY and Others.[1]

January 24, 1898.

Nos. 10,823—(245).

Carrier—Insurance on Grain in Elevator—Other Insurance—Subrogation—Contribution.

A common carrier stored in its elevator the grain of its shippers awaiting transhipment, and procured twelve policies of insurance on such grain. While all of these policies were in force, a loss by fire occurred for which the carrier was liable to the shippers. It was held that the policy issued by the plaintiff covered only the liability of the carrier to the shippers. See Minneapolis v. Home, 55 Minn. 236. The other eleven policies covered grain of the common carrier, or held by it in trust. *Held*, the carrier was, in case of loss, entitled to recover in its own name on these eleven policies, holding in trust for the shippers all in excess of its own claims

1 Reported in 74 N. W. 140.

on the grain; but, as the carrier was liable to them for the loss, it would hold all of the amount recovered on its own claim, and, when it paid the amount to the shippers, would do so, not as trustee, but in satisfaction of its own liability to them. Under these circumstances, the eleven policies covered only the liability of the carrier to the shippers, the same as did the policy issued by plaintiff; and, the total amount of insurance being greater than the amount of loss, each of the twelve policies must contribute ratably with the others; and, after each has so contributed, the plaintiff is not entitled to be subrogated to the carrier's rights against the other eleven insurers.

Appeal by plaintiff from a judgment for defendants entered in the district court for Hennepin county pursuant to the findings and order of Smith, J.   Affirmed.

*S. E. Hall, McVey & McVey* and *A. H. McVey,* for appellant.

The insurance policies issued by the eleven other insurance companies covered the grain destroyed in the elevator, and the railway company could have recovered the entire amount of loss from said eleven insurance companies to the extent of their several policies. To this extent the railway company's liability was protected and diminished.   London v. Glyn, 1 Ell. & Ell. 652; Home v. Baltimore, 93 U. S. 527; Hough v. President, 36 Md. 398; Turner v. Stetts, 28 Ala. 420; Stillwell v. Staples, 19 N. Y. 401; Phœnix v. Favorite, 49 Ill. 259; Siter v. Morrs, 13 Pa. St. 218; Ayres v. Hartford, 17 Iowa, 176; Home v. Favorite, 46 Ill. 263; Johnson v. Campbell, 120 Mass. 449; Ætna v. Jackson, 16 B. Mon. 242; Day v. Charter, 51 Me. 91; Ripley v. Ætna, 30 N. Y. 136; Savage v. Howard, 52 N. Y. 502; Houghton v. Watertown, 10 Ins. L. J. 547.

The policy issued by the Home Insurance Company did not cover the grain destroyed in the elevator, but insured only the liability of the defendant railway company to the owners and shippers of the grain.   The policy issued by the Home Insurance Company and the policies issued by the eleven other companies were not contributing policies, and the insurance effected by the two sets of policies was not in law contributing insurance.   The Home policy was for a different person, on different property, and a different risk from the policies in the eleven other companies.   Connecticut v. Merchants, 15 U. S. L. J. 615; Lowell v. Safeguard, 88 N. Y. 591; Home v.

Gwathmey, 82 Va. 923; President v. Loney, 20 Md. 20; Sloat v. Royal, 49 Pa. 14; Fire v. Merchants, 66 Md. 339; Minneapolis v. Home, 55 Minn. 236; Royster v. Roanoke, 26 Fed. 492; Tuck v. Hartford, 56 N. H. 326; Hastings v. Westchester, 12 Hun, 416; Wells v. Philadelphia, 9 Serg. & R. 103; Monadnock v. Manufacturers, 113 Mass. 77; North British v. London, 5 Ch. Div. 569.

The Home Insurance Company stands in the place of the defendant railway company and is entitled to be subrogated to the railway company's rights, and to have all the indemnity which the said railway company had or held, including the insurance in the eleven other companies, collected for its benefit over and above the amount necessary fully to indemnify the defendant railway company.

*Kitchel, Cohen & Shaw* and *Wendell Hertig,* for defendant insurance companies.

The Home policy and the policies of the other companies were contributive. The interest covered by the Home policy and by the other policies was the same. Phœnix v. Erie, 117 U. S. 312; Home v. Baltimore, 93 U. S. 527; Waters v. Monarch, 5 El. & B. 870; London v. Glyn, 1 Ell. & Ell. 652; Joyce v. Kennard, L. R. 7 Q. B. 78; California v. Union, 133 U. S. 387. The policies of the defendant insurance companies did not reduce the liability of the railway company. Minneapolis v. Home, 64 Minn. 61; Com. v. Hide, 112 Mass. 136.

The plaintiff is not entitled to subrogation. St. Louis v. Commercial, 139 U. S. 223; Inman v. South Carolina, 129 U. S. 128; Southard v. Minneapolis, 60 Minn. 382; Wager v. Providence, 150 U. S. 99, at p. 108; Jackson v. Boylston, 139 Mass. 508.

*Alfred H. Bright,* for respondent railway company.

CANTY, J. [2]

The defendant railway company has for years carried large quantities of grain over its railroad from Minneapolis, Minn., to Gladstone, Mich. At the latter point it had an elevator in which it placed this grain while awaiting shipment across the Great Lakes. On the night of November 29, 1891, this elevator with its contents

[2] BUCK, J., absent, took no part.

was destroyed by fire. The contents consisted of $56,499 worth of wheat, the property of several shippers, who had shipped it over said railroad; and the amount of freight charges then due the railway company on the same was $3,330, and the amount of elevator charges was $246.

Prior to the loss, the plaintiff insurance company had issued its policy of insurance to the railway company, insuring it against the loss of the contents of this elevator by fire. The policy insured the railway company

"In the sum of $50,000 on flour, corn, grain, seeds, provisions and other merchandise, excluding petroleum or its products, it being understood and agreed that the insurance under this head is to cover the liability of the insured as carriers and warehousemen, as well as their own property, and their charges for freight, or money paid on or charged on, for which the railroad company is liable or may have earned while contained in their elevator situated at Gladstone, Michigan."

Prior to the loss each of the eleven defendant insurance companies issued its policy of insurance to the railway company,

"On grain and seeds, their own or held by them in trust or on commission, or sold but not delivered,"

while contained in the elevator. After the loss occurred, an action was brought by the railway company against this plaintiff to recover the $50,000 stipulated for in its said policy. The case was tried. The railway company had a verdict. A new trial was granted on appeal to this court. See 55 Minn. 236, 56 N. W. 815. After the complaint was amended the case was retried, and the decision was again in favor of the railway company and was sustained on appeal. See 64 Minn. 61, 66 N. W. 132. The amount awarded the railway company was $28,607 (being one-half the loss on the grain), interest and costs.

In the meantime the railway company had commenced separate actions against each of the other eleven insurance companies. Judgment was obtained against one of these for the full amount stipulated in the policy, and the other ten, while the actions were pending against them, paid to the railway company their pro rata share of the loss, on the theory that plaintiff and the other eleven

companies should contribute ratably to the payment of the whole loss. It will be observed that the amount awarded against this plaintiff was awarded on the same theory. Each of the twelve policies contained a provision that the insurer shall not be liable for a greater proportion of any loss

"Than the amount hereby insured shall bear to the whole amount of insurance, whether valid or not, or by solvent or insolvent insurers, covering the same property."

After judgment was entered against plaintiff in the action brought against it, it commenced this action against the railway company and the other eleven insurance companies to restrain the railway company from satisfying its said judgment against one of them, and from dismissing the other ten actions against the other ten of them, and praying that the plaintiff be subrogated to the rights of the railway company against said other eleven insurance companies. Shortly after this action was commenced, this plaintiff paid the amount of the judgment against it to the railway company, and set up that fact in a supplemental complaint in this action.

On the trial before the court, without a jury, the court found all the foregoing facts, and the further facts hereinafter stated, and thereupon ordered judgment for defendants. From the judgment entered thereon, plaintiff appeals.

On the first appeal in the former action brought against this plaintiff, we held that, under the above-quoted provisions of its policy, it was liable only to the extent of the interest of the railway company in the grain, and to the further extent that the railway company was liable to the shippers; that, under the bills of lading issued by the railway company, it was not, on the allegations of its complaint, liable to the shippers for the loss of the grain by reason of this fire, and could not recover for any such liability.

Thereupon the railway company amended its complaint, and alleged that the fire was caused by the negligence of its own servants in and about the elevator, and that, by reason of such negligence, it was liable to the shippers for the value of the grain lost in the fire. On these allegations, it recovered on the second trial.

It is contended by respondents that the judgment in the former action brought by the railway company against this plaintiff is a bar to this action; but, for the purposes of this case, we will assume that said judgment is not such a bar, without so deciding.

This appellant now contends that its liability was in the nature of a surety or guarantor for the liability of the railway company to the shipper, and that, on payment to the railway company, it is entitled to be subrogated to the rights of the railway company against all other parties. We cannot agree with appellant. It is not entitled to be subrogated to those rights as against others who are in equity its co-sureties. It concedes this, but claims that the other eleven insurance companies are not its co-sureties or co-insurers. In our opinion, they are. Appellant claims that it insured only the liability of the railway company, while the other eleven insurance companies insured the grain. This assertion is misleading. There is language in the policy issued by appellant, as well as in the other policies, purporting to insure the grain itself. But in all of these policies the meaning of such language is changed and limited by other provisions of the policy. The effect of the provisions limiting such language in appellant's policy is determined as above stated in the opinion published in 55 Minn. 236, 56 N. W. 815.

Let us now determine the effect of the provisions which limit and change the meaning of such language purporting to insure such grain as found in the other eleven policies. They purport to insure the railway company against loss by fire "on grain, their own or held by them in trust." Even though a carrier, warehouseman, or bailee has no pecuniary interest in the goods in his possession and is not liable for their loss by fire, he may insure them as "his own or held in trust by him," and, in case of loss, may recover in his own name, holding all in excess of his own claim in trust for the shipper or bailor. Redfield, Carr. § 360; 1 Biddle, Ins. § 171; 1 Wood, Ins. §§ 75, 294; Fire v. Merchants, 66 Md. 339, 7 Atl. 905.

Now, if a loss by fire occurred which was covered by those eleven policies, and the railway company had no claim for freight or other charges, and was not liable for the loss to the shipper, it would hold the whole amount recovered on the policies in trust for the shipper;

but, if it was liable to them for the whole loss, it would not hold the amount recovered in trust at all, but would hold the same in its own right, to indemnify itself for its liability to them, and, when it paid the same over to them, would do so, not as trustee, but in satisfaction of its own liability to them.

If these conditions existed when the loss occurred, the insurance was at that moment nothing but an indemnity to the insurer for his liability to the shipper, precisely the same as was the insurance furnished by the plaintiff insurance company. Such is this case. The railway company did not own the grain, and, under the conditions that existed at the time of the loss, the eleven defendant insurance companies were liable to the railway company, not as insurers of the grain, but on their contracts to pay the railway company sufficient to indemnify it, and the character of this liability is exactly the same as that of the liability of plaintiff.

Under these circumstances, there is such identity of interest, person and risk that it is merely a case of double insurance, and each and all of the policies must contribute ratably to the payment of the loss. May, Ins. (3d Ed.) §§ 434–437. The fact that, if conditions were different at the time of the loss, this identity might not have existed, is immaterial. But even if the conditions were different, and such identity did not exist, and each of the insurers was not entitled to contributions from all of the others, it might not follow, as appellant seems to assume, that it would be entitled to subrogation against the other eleven companies. This disposes of the case.

Judgment affirmed.