# DECISIONS

OF THE

# SUPREME JUDICIAL COURT

OF

## MASSACHUSETTS

---

NEW YORK, NEW HAVEN AND HARTFORD RAILROAD COM-
PANY *vs.* PREFERRED UNDERWRITERS, INC. & others.

Suffolk.. December 8, 1924. — March 2, 1925.

Present: RUGG, C.J., BRALEY, PIERCE, CARROLL, & WAIT, JJ.

*Contract,* Construction, Reformation. *Evidence,* Extrinsic affecting writ-
ing. *Practice, Civil,* Exceptions. *Words,* "Unable."

In the absence of an obvious mistake, a plaintiff in an action at law cannot
correct by parol evidence substantial errors in the terms of a written
instrument to which he and the defendants are directly or medially
parties, the remedy of the parties so situated being in a court of equity
for reformation of the instrument.
A railroad company delivered a deed of real estate as an escrow to a trust
company for delivery to the grantee named in the deed upon the per-
formance by a corporation, called the underwriters, of the provisions
of an agreement in writing between that corporation and the railroad
company, which in part read as follows: "If the Railroad Company
shall be unable to convey said title free from all incumbrances except
as that set forth, said Railroad Company shall, on the redelivery of
said deed, to wit, by said Trust Company pay to said Underwriters
. . . [certain sums which should previously have been paid it by the
underwriters.] If, however, the said Railroad Company shall be
unable to convey a title as above provided, and said Underwriters
shall fail to comply with each and every condition to be by them com-
plied with hereunder, said Railroad Company may retain said . . .
[sums] as consideration for entering into this agreement." In an ac-
tion upon a note given by the underwriters for one of the sums so
stipulated to be paid to the railroad company, it was *held,* that

(1) Evidence of previous negotiations of the parties and former drafts of the agreement, which tended to show that the second "unable" in the quoted phrase should have read "able," improperly was admitted;

(2) Upon a consideration of the whole instrument, it was apparent that the second "unable" should read "able";

(3) The error not being harmful, the exception to the admission of the evidence must be overruled.

CONTRACT upon the promissory note described in the opinion.   Writ dated April 20, 1923.

In the Superior Court, the action was heard by *Flynn*, J., without a jury. Rulings by the judge are described in the opinion. The judge found for the plaintiff in the sum of $13,875. The defendant Averill alleged exceptions.

*G. E. Mears*, for the defendant Averill.

*C. F. Choate, 3d*, (*R. Proctor* with him,) for the plaintiff.

PIERCE, J.   This is an action of contract in three counts upon a promissory note for $12,500, dated May 15, 1922, payable to the plaintiff with interest in fifteen days from its date. The first count is against all the defendants, the second against the Preferred Underwriters, Inc., (hereafter called the Underwriters) as maker, and the third against the indorsers, of whom the defendant Charles S. Averill was one. The defendant Averill alone appeared to defend the action, and set up in answer a general denial and also the terms of an agreement, dated March 13, 1922, of which he was to have the benefit and which, he contended, discharged him from liability. The judge of the Superior Court, by whom the action was heard without a jury, found for the plaintiff, and the case comes to this court upon the defendant Averill's exceptions to this finding, to the judge's refusal to make certain rulings of law requested by him, and to the admission of certain evidence.

By agreement of counsel the judge found that the plaintiff is the holder of the note; that due presentment, demand and notice were made upon and given to the defendant; and that the note has never been paid. He further found that the note for $12,500 is the last of several notes which had been given in part payment on an original note for $24,500, dated March 8, 1922, which by successive payments of cash had

been reduced on May 15, 1922, to the said sum of $12,500; that the original note for $24,500 is the note referred to in paragraph 2 of the defendants' answer and in "paragraph 2 and elsewhere of an agreement dated March 13, 1922," between the plaintiff and the Underwriters; that the note now sued upon was indorsed by the defendant Averill, and received and accepted by the plaintiff under the same terms and conditions as the original note, which was given solely under the terms and conditions, so far as applicable, of the agreement of March 13, 1922; and that the defendant, as the plaintiff knew at the time the note in suit was given to it, indorsed the note for the accommodation of the Underwriters.

Before the execution of the agreement of March 13, 1922, the plaintiff had signed, acknowledged and delivered in escrow to the State Street Trust Company a deed of certain land in Boston. At the request of the Underwriters the deed of the plaintiff, as grantor, ran to The Bostonian, Inc., as grantee, and was to be held and disposed of by the State Street Trust Company in accordance with the conditions enumerated in the agreement, that is, in substance, the plaintiff agreed to sell and the Underwriters agreed to pay as the purchase price of the land $1,505,008; the sum of $10,000 previously paid was to be credited as a payment on the purchase price "provided the terms of . . . [the] agreement . . . [were] fully performed by said Underwriters"; $25,000 was to be paid to and received by the plaintiff on the execution of the agreement, in a certified check for $500 and in a note of $24,500 of The Bostonian, Inc., dated March 8, 1922, payable in fifteen days and indorsed by the Underwriters, C. S. Averill, M. B. Hayes, and William H. Sellers; $715,000 in cash or a certified check to be paid on or before May 15, 1922, and the balance by promissory note of "The Bostonian, Inc." secured by mortgage on the premises, payable on or before July 15, 1922. May 15, 1922, was the time fixed for the delivery of the deed at the registry of deeds to The Bostonian, Inc., provided the title to the premises was free from all incumbrances except such as are set forth in the deed, the taxes as of April 1, 1922, and such in-

cumbrances as may be specifically waived by the underwriters. The agreement further provided that, if the payments were made in full, the plaintiff would pay the Underwriters interest on $10,000 from December 28, 1921, to the date of the delivery of the deed, and interest on the $25,000 from March 23, 1922, to the date of the delivery of the deed. It further provided that the deed and mortgage may be delivered and the consideration paid at any time prior to May 15, 1922, upon which the parties may agree.

The controversy in this case turns upon the use of the word "unable" in the tenth line of the second paragraph of Article VI of the agreement of March 13, 1922, as printed in the record. Article VI reads as follows:

"In case said Underwriters shall not comply with the terms and conditions set forth in Articles II and III hereof, then said deed shall be delivered by said Trust Company to said Railroad Company, and thereafter none of the parties hereto, including said Trust Company, shall be under any further liability on account of this agreement except as hereinafter set forth.

"If the Railroad Company shall be unable to convey said title free from all incumbrances except as that set forth, said Railroad Company shall, on the redelivery of said deed, to wit, by said Trust Company pay to said Underwriters the sum of $10,000 heretofore paid to the Railroad Company and referred to in paragraph two (2) hereof, and the said sum of $25,000 paid to said Railroad Company at or prior to the execution of this agreement, it being understood that this agreement in so far as it refers to said $25,000 is contingent upon said note for $24,500 above mentioned having been paid. If, however, the said Railroad Company shall be unable to convey a title as above provided, and said Underwriters shall fail to comply with each and every condition to be by them complied with hereunder, said Railroad Company may retain said $10,000 and said $25,000 as consideration for entering into this agreement.

"The acceptance of the deed by said The Bostonian, Inc., shall be conclusive of the performance by said Railroad Company of the terms of this agreement."

Subject to the exception of the defendant the judge admitted in evidence the testimony of the vice-president of the plaintiff and the testimony of the president of the Underwriters, to the effect that the plaintiff and the Underwriters had previously executed several agreements for the purchase and sale of the land covered by the agreement of March 13, 1922, the one last prior being dated December 28, 1921; that it was the intention of the parties to the agreement dated March 13, 1922, that it should follow the general terms of the agreement dated December 28, 1921, and that the last named agreement contained a provision which read as follows:

"If the Railroad Company shall be unable to convey said title free from all incumbrances except as above set forth, said Railroad Company shall on the redelivery of said deed to it by said Trust Company pay to said Underwriters the sum of ten thousand dollars ($10,000) paid to said Railroad Company upon the execution of this agreement, but if said Railroad Company shall be able to convey a title as above provided, and said Underwriters shall fail to comply with each and every condition to be by them complied with hereunder, said Railroad Company may retain said ten thousand dollars ($10,000) as consideration for entering into this agreement."

At this point in the examination of the vice-president, "the defendants admitted that the Railroad Company was able to transfer the property and the Preferred Underwriters were unable." The vice-president then testified, in substance, that the plaintiff had an optional agreement drawn, which draft, with certain changes in dates, was recopied by a stenographer in his office with the result that the word "able" near the end of the draft, without the knowledge of the parties to the agreement became "unable" in the agreement executed March 13, 1922. The draft given the stenographer to copy into the final agreement was then offered and received in evidence, subject to the exception of the defendants.

The testimony of the vice-president of the plaintiff, the testimony of the president of the Underwriters, and the

draft copy of the agreement of December 28, 1921, were received in evidence wrongly. In the absence of an obvious mistake, a plaintiff in an action at law cannot correct by parol evidence substantial errors in the terms of a written instrument to which he and the defendants are directly or medially parties, the remedy of parties so situated being in a court of equity for reformation of the instrument. *Canedy* v. *Marcy*, 13 Gray, 373. *Sawyer* v. *Hovey*, 3 Allen, 331. *Page* v. *Higgins*, 150 Mass. 27. *Commercial Savings Bank of Washington* v. *Colthurst*, 195 Iowa, 1032. *Minneapolis, St. Paul & Sault Ste. Marie Railway* v. *Home Ins. Co.* 55 Minn. 236, 242.

Without resort to evidence outside the agreement the same result must follow from an examination and analysis of the agreement itself. Williston on Contracts, § 619. *Pacific Surety Co.* v. *Toye*, 224 Mass. 98. *Morgan* v. *Thomas*, 9 Q. B. D. 643, 646. The first paragraph of Article VI and the first sentence of the second paragraph of that article are a declaration of what shall be the legal effect upon the rights of the parties, in case the Underwriters shall not comply with the terms and conditions of articles II and III of the agreement, or in case the railroad company shall be unable to convey the title free from all incumbrances. The second sentence of the second paragraph of the article, beginning with the words "If, however," provides a result if the railroad company shall be unable to convey a title in the manner provided in the first sentence of the same paragraph, which is inconsistent with and hostile to the consequence of such action determined in the first sentence. It is plain the second sentence was intended to provide for a situation which was not fully covered by the first paragraph, and by the first sentence of the second paragraph, and that the second sentence covers such deficiency if the word "unable" was mistakenly used for the word "able."

It results that the exceptions must be overruled.

*So ordered.*