AARO PACKAGING CORPORATION AND OTHERS v.
FIRE INSURANCE EXCHANGE.
KENNETH FELSTED, INTERVENOR.
JOEL DILLNER v. SAME.

158 N. W. (2d) 586.

April 26, 1968—No. 40,539.

*Martin E. Raskin* and *Manly A. Zimmerman,* for appellant.

*Robins, Davis & Lyons, Sidney S. Feinberg,* and *Desmond F. Pratt,* for respondents Benjamin F. Westby and E. Gordon Hoar.

Heard before Knutson, C. J., and Nelson, Murphy, Rogosheske, and Peterson, JJ.

PETERSON, JUSTICE.

This is an appeal from an order of the Hennepin County District Court determining the order of priority among claims to funds in the possession of a warehouseman's receiver, the funds consisting of insurance proceeds from a fire loss at an insured warehouse. Appellant also apeals from an order denying his motion to amend that order.

The facts essential to consideration of what is basically an issue of law are not complicated. Appellant, as a bailor, stored a quantity of goods, found to have a value of $4,200, on the premises of Aaro Packaging Corporation, as bailee. Aaro, which was insured under a standard fire insurance policy by Fire Insurance Exchange, suffered a total fire loss. No claim is made that the fire was caused by any negligence of the insured. The insurer, by settlement, paid $27,500 to the receiver for the insured warehouseman, the disposition of which, under the terms of the settlement, was to be determined by the district court in a proceeding fixing an order of priority among all claimants. The funds in possession of the receiver are insufficient to pay all claims so the practical effect of an order denying priority to appellant is to deny his claim in whole or in part. The provision of the insurance policy upon which appellant's claim to priority is based states:

"CONTENTS COVERAGE: When the insurance under this policy covers contents, such insurance shall cover on all contents and personal property (except as otherwise excluded) of every description; * * * and *provided the insured is legally liable therefor,* personal property (except as otherwise excluded) while held in trust, on commission, or consignment, for alteration or repair; * * *." (Italics supplied.)

The crux of appellant's contention is that the insurance policy was insurance upon his property—that his stored goods were held "in trust" and the policy's qualifying language, "provided the insured is legally liable therefor," refers to no more than a bailee's general obligation to return or account for the bailed property. It is the contention of respondents, however, that the policy's coverage is more limited and includes only the insured's more particular liability for destruction of bailed property as a result of the insured's fault. It is conceded that, were we to sustain appellant's contention, he would be entitled to a priority, the practical effect of which would entitle him to receive the full amount of his claim in preference to other creditors; and it is conceded that if, on the other hand, we were to sustain respondents' contention, appellant would have no standing other than as a general creditor, the practical effect of which would not permit full collection of his claim.

The trial court held with the respondents' construction of the insurance

policy, and we agree. The decisions of these cases arising in this jurisdiction are particularly persuasive for that view: Minneapolis, St. P. & S. S. M. Ry. Co. v. Home Ins. Co. 55 Minn. 236, 56 N. W. 815, 22 L. R. A. 390; Id. 64 Minn. 61, 66 N. W. 132; Home Ins. Co. v. Minneapolis, St. P. & S. S. M. Ry. Co. 71 Minn. 296, 74 N. W. 140; Orient Ins. Co. v. Skellet Co. (8 Cir.) 28 F. (2d) 968; Millers' Mutual Fire Ins. Assn. v. Warroad Potato Growers Assn. (8 Cir.) 94 F. (2d) 741.

In the Home Insurance cases, a common carrier, which acted as a warehouseman in storing the grain of shippers, was insured under a policy covering grain and other merchandise, by the terms of which policy it was "understood and agreed that the insurance under this head is to cover the liability of the insured as carriers and warehousemen, as well as their own property, * * * for which the railroad company is liable * * * while contained in their elevator * * *." Mr. Justice Mitchell, writing the opinion denying the carrier's own claim for recovery of the value of the shippers' grain destroyed by fire, without the insured's fault, said (55 Minn. 240, 56 N. W. 815):

"* * * It is too plain to admit of argument that, as to the property of others intrusted to its custody, this was not an insurance for the benefit of the shippers, but for the benefit of the plaintiff exclusively, and only to the extent of its own interest. It is well settled that, if the carrier would insure for the benefit of the owners of the property, this must appear from the use of apt terms in the policy to that effect."

In the Skellet case, the owner of a public storage warehouse was insured under a standard fire insurance policy against loss or damage by fire on "merchandise and property of every description, not owned by the assured, for which they may be legally liable." After a fire occurred without the insured's fault, the insured had its loss appraised and brought an action against the insurer, contending that the goods themselves stored in the warehouse were insured, but the insurer denied coverage of such stored goods, contending that the plain terms of the policy insured only the warehouseman against its legal liability to the bailors. The district court entered judgment against the insurer, but the Court of Appeals reversed, citing the Home Insurance cases and saying (28 F. [2d] 970):

"Concededly, Skellet Co.'s relation to the owners of the stored goods and its interest in them was such as entitled it to take out insurance for their protection. Any expression in an insurance contract signifying that intent and purpose is sufficient. To that end the clause 'for which they may be legally liable' should have been omitted, or there should have been a statement that the goods described were held in trust, or a similar expression of like import should have been used,—and then there could be no doubt that the contract was made in the name of Skellet Co. for the benefit of the real owners. But the quoted clause, in the absence of 'held in trust,' etc., is the antithesis of any purpose of that kind, and there is no ambiguity. It is plain that the only subject insured was the legal liability of Skellet Co. for the stored goods."

An insurance policy containing language covering property held by a bailee "*in trust* or on storage, *if* in case of loss the insured is legally liable therefor" (italics supplied), which we consider legally indistinguishable from the language of the insurance policy now in issue, was at issue in the Warroad Potato Growers case. Speaking of the different language in the Home Insurance and Skellet cases, Judge Sanborn said (94 F. [2d] 742):

"* * * While it is true that the language used in the coverage clause of the policies referred to in those cases is not identical with the language of the policy in suit, its meaning is the same."

A judgment against the insurer for the value of bailed goods destroyed by fire without fault of the insured bailee was accordingly reversed.

Because appellant's property therefore could not on this record be deemed insured, it follows that no trust fund existed in the hands of Aaro's receiver for the benefit of appellant. He was, as the trial court held, accordingly entitled to no priority of claim among Aaro's other creditors.

Affirmed.