### HEZEKIAH DRAKE *vs.* THOMAS STARKS, EXECUTOR.

*H* in 1854 being embarrassed entrusted certain property to *N*, to be sold, and after the payment of certain debts the surplus to be returned to him. In 1862 the last portion of the property was sold to one *B* and his note payable to *N* taken in payment. In 1868 *H* and *N* executed the following mutual release under seal:—"The undersigned having had mutual dealings in former days

have reviewed the same, and though there is justly due a balance from *H* to *N*, yet, in consideration of love and affection and of one dollar, we each release to the other all obligations and demands whatsoever." At this time there remained unpaid the sum of six hundred dollars on the note of *B*, which was afterwards received by *N*. In assumpsit brought by *H* against *N*'s executor for the recovery of the money, it was held that proof was not admissible, that, at the time the release was given, *N* told *H* that the money remaining unpaid on *B*'s note should not be included in the release.

Also that evidence was not admissible that *N*, after the release and after receiving the six hundred dollars, had admitted that the money belonged to *H*.

ASSUMPSIT for money received by the defendant's intestate to the use of the plaintiff; brought to the Superior Court for Litchfield County, and tried to the jury on the general issue before *Sanford, J.* The jury having returned a verdict for the plaintiff, the defendant moved for a new trial. The facts are fully stated in the opinion.

*C. B. Andrews* and *F. D. Fyler*, in support of the motion, cited 1 Greenl. Ev., §§ 275, 276, 277; *Stackpole* v. *Arnold*, 11 Mass., 30, 31; *Carter* v. *Bellamy*, Kirby, 291; *Herd* v. *Bissel*, 1 Root, 260; *Bull* v. *Talcot*, 2 id., 120; *Avery* v. *Chappel*, 6 Conn., 270; *Crocker* v. *Higgins*, 7 id., 349; *Reading* v. *Weston*, 8 id., 118; *Woodbury Savings Bank* v. *Charter Oak Ins. Co.*, 29 id., 374.

*H. B. Graves*, contra, cited *Allen* v. *Frisbee*, 2 Root, 76; *Collins* v. *Tillou*, 26 Conn., 368; *Clarke* v. *Tappin*, 32 id., 56.

CARPENTER, J. This is an action of general assumpsit. The plaintiff claimed that in the year 1854, he, being in embarrassed circumstances, placed in the hands of Noah Drake, the defendant's intestate, certain property to be by him sold, the avails of which were to be applied to the payment of the plaintiff's debts, and the surplus was to be returned to him. The last of the property was sold in 1862 to one Worthy P. Bray, and a note secured by mortgage was taken for the purchase money. That note was payable in instalments, the last falling due April 1st, 1870. Payments were made from time to time, and the note was fully paid

about the time the last instalment fell due. In November, 1868, the plaintiff and Noah Drake executed an instrument under seal as follows: "The undersigned, Noah Drake and Hezekiah Drake, having had mutual dealings and transactions in former days, have reviewed the same, and though we find that, justly, there is a balance due from said Hezekiah to said Noah, yet in consideration of love and affection, and of one dollar, we each release to the other all obligations, claims and demands whatsoever. Dated at Torrington, November, 1868.

Noah Drake. (Seal.)

Hezekiah Drake. (Seal.)"

The plaintiff offered himself as a witness and testified, subject to the objection of the defendant, that in November, 1868, at and before the time of the execution of the release, the said Noah told him that $600 included in the Bray note belonged to him, the plaintiff, which he should pay to the plaintiff as soon as it was received from Bray; that provided Bray paid it said sum of $600 would be coming to the plaintiff; that said Noah asked him to execute the release to show that all former matters had been settled between them, saying that it would make no difference with the plaintiff in relation to his share in the Bray note, and that he should pay it all the same just as soon as he received the money from Bray. The plaintiff further claimed to have proved by the statements and admissions of the said Noah, some of which were made prior to November, 1868, and some were made after April 1st, 1870, that said sum of $600 belonged to the plaintiff.

There was no evidence of any other unsettled matters between the plaintiff and Noah Drake, and none was offered or claimed by either party.

The defendant offered the release in evidence, and asked the court to instruct the jury to lay out of their consideration so much of the plaintiff's testimony as tended to vary or contradict it. The court charged the jury that the release was a bar to any then existing demand, but was not a bar to any future contingent liability that might have arisen between the parties; and that if the jury should find the facts as claimed by the plaintiff, and that Noah Drake after April 1st, 1870,

acknowledged that the above sum belonged to the plaintiff, and promised to pay the same, then the release would not be a bar, but that the plaintiff might recover that sum with interest; and that in determining whether the plaintiff's claim was just, they might take into consideration all the testimony offered by the plaintiff, including his own, not for the purpose of varying or contradicting the release, but for the purpose of showing that the release did not in its terms and in fact include the future liability of Noah Drake depending upon the future contingency of the payment of the note by Bray.

Conceding that the facts were as the plaintiff claimed them to be, the question whether his demand was barred by the release was a question of law. The court instructed the jury that it was not. We think that instruction was erroneous. If the demand existed when the release was given it was barred; if it did not, but originated then, or subsequently, it was not. The claim did not come into existence by reason of anything that took place between the parties at the giving of the release. That had reference solely to "mutual dealings and transactions in former days." There was no exchange of property then, no contract between the parties, and no dealings from which an obligation could arise. The promise to pay six hundred dollars when the Bray note should be paid, was simply a promise to pay a pre-existing obligation upon the happening of a future event. This is evident from the plaintiff's own testimony, in which he says "that said Noah asked him to execute said release to show that all former matters had been settled between them, saying that it would make no difference with the plaintiff in relation to his share in the Bray note and that he should pay it all the same, &c."

That promise was manifestly designed, not to create a new liability, but to save an existing liability from the operation of the discharge.

Nor did the claim subsequently arise. No consideration subsequently moved from the plaintiff—no contract between the parties, and no business transaction out of which a liability could arise. There was simply a naked promise, the only consideration of which was the "mutual dealings and trans-

actions in former days" between the parties. The promise did not create the liability although it might be evidence of it and did in fact name a time of payment.

The payment of the note by Bray to Noah Drake may have so far changed the relations of the parties as to give the plaintiff another remedy—an action for money had and received—but it created no new liability. The plaintiff in such action can only recover by proving the dealings between the parties as far back as 1862, and showing that out of those dealings an obligation arose, that is, that Noah Drake was liable to account to the plaintiff for the property received and sold by him. Noah Drake's liability therefore existed from 1862 until November, 1868. As early as January, 1862, he had received and sold the plaintiff's property. He had paid all demands against the plaintiff, and there was in his hands a surplus of six hundred dollars, to which the plaintiff, as he now contends, had a just claim. He certainly had it then if he has it now, and might at any time have compelled Noah Drake to account. He was not bound by the long credit given to Bray, as it does not appear that there was any provision authorizing Noah Drake to sell on credit. But however this may be, Noah Drake took the note payable to himself, not as agent or trustee, but in his individual capacity, although six hundred dollars out of seven hundred and fifty, the face of the note, belonged to the plaintiff. There would seem to be no doubt or uncertainty about the payment of the note. It was well secured by a mortgage and Noah Drake did not hesitate to assume the risk. There were several payments, quite an amount in the aggregate, made on the note before the release was given, and more than three-quarters of the amount so paid, upon the plaintiff's theory, belonged to him. Moreover the very promises on which the plaintiff relies were made at different times, and some of them before the date of the release. All these promises were made in consideration of a present liability, and contemplated a payment in the future of a then existing indebtedness.

The release in terms discharges "all obligations, claims and demands whatsoever." Inasmuch as this demand then

existed, the release discharged it; and, as it is an essential part of the plaintiff's case, we think he is not entitled to a judgment.

A new trial is advised.

In this opinion the other judges concurred.