WILLIAM S. ALLEN vs. FREDERICK D. RULAND ET AL.

Third Judicial District, Bridgeport, October Term, 1906.

BALDWIN, HAMERSLEY, HALL, PRENTICE and THAYER, Js.

A release of one of several joint trespassers, given for a valuable consideration, is a release of all.

The amount or value of the consideration is immaterial in the case of an unliquidated demand.

A receipt is evidence that an obligation has been discharged, but a release is itself a discharge of it.

The fact that those who caused the false imprisonment of the plaintiff intended to secure, and believed they had secured, his confinement by lawful means, does not exonerate them from liability to him as wrongdoers.

An objection to the admission in evidence of a general release, because it does not appear that it was in fact given to discharge the particular cause of action sued upon, is one addressed to the effect to be given to it rather than to its admissibility.

Allen *v.* Ruland.

The plain legal effect of a written instrument which embodies the final agreement of the parties cannot be varied by parol evidence that they did not intend it to be so interpreted, or even expressly agreed that it should have no such effect; and this rule operates in favor of those not parties to the instrument as fully as in favor of those who executed it.

A general release of all rights and causes of action, debts, dues, claims and demands whatsoever, in law or in equity, given for a valuable consideration, extinguishes the liability of the releasee for any unlawful confinement to which he may have previously subjected the releasor.

That allegations which are absolutely immaterial have been traversed does not prevent a trial court from excluding evidence offered to prove their truth.

Where the facts before the jury are undisputed and the question at issue is purely one of law, the proper course is for the trial court to direct what verdict shall be rendered.

The case of *O'Shea* v. *New York, Chicago & St. Louis R. Co.*, 105 Fed. Rep. 559, disapproved.

Argued October 30th—decided December 18th, 1906.

ACTION for false imprisonment, brought to the Superior Court in Fairfield County where a demurrer to the third defense was overruled (*Gager, J.*), and the cause tried on the remaining issues to the jury before the same judge; verdict and judgment for defendants, and appeal by the plaintiff. *No error.*

The third defense read thus: " One James H. Ward and one Edith Ward were joint tort feasors with the defendants in the alleged seizure and detention of the plaintiff, and since the institution of this action, to wit: on the day of          , the plaintiff has executed and delivered to said James H. Ward and Edith Ward, for a valuable consideration, a full release and discharge of said cause of action, and thereby discharged these defendants from all claim for damages for said alleged cause of action."

After the overruling of the demurrer to it, the following reply was filed: " 1. The plaintiff denies the truth of the matters contained in said 3d defense of the defendants. 2. If any release exists between the plaintiff and said James H. and Edith Ward, which by its terms is broad enough to cover this cause of action, the same was

given in satisfaction of other demands and did not refer to and was not intended to discharge the cause of action now pending."

To this a rejoinder was filed denying the truth of the allegations in its second paragraph.

On the trial it was undisputed that the plaintiff had been confined for a time by the defendants in a sanitarium at Westport; and that he had a sister Ethel or (Ethelinda), who was the wife of James H. Ward.

The plaintiff offered evidence that he had complained to Mr. and Mrs. Ward of having been annoyed by strangers on the street, and that soon afterward he was forcibly taken against his will to this sanitarium, by attendants of the defendants sent for the purpose at the request of Mr. and Mrs. Ward and accompanied by Mr. Ward; that he was kept there under restraint from 1896 to 1902; and that Mrs. Ward meanwhile took charge of his financial affairs and from his moneys paid the defendants for keeping him so confined, and also for certain extras furnished to the plaintiff at his own request.

The defendants offered evidence that in 1896 the plaintiff had been pronounced insane by two physicians, who advised Mr. and Mrs. Ward that he should be at once placed under restraint; that at Mrs. Ward's request the defendants, with Mr. Ward, took him to their sanitarium; and that in 1903, after he had been released from all constraint and had left the sanitarium, an attorney acting for Mr. and Mrs. Ward paid him $200, in full satisfaction of any money demand against them, taking the following release:—

" To all to whom these presents shall come or may come —Greeting:

" Know ye, that I, William S. V. Allen, for and in consideration of the sum of two hundred ($200) dollars, lawful money of the United States, to me in hand paid by James H. Ward and Ethel V. Ward, have remised, released and forever discharged, and by these presents do for myself, my heirs, executors and administrators, remise, release and

forever discharge the said James H. Ward and Ethel V. Ward, their heirs, executors and administrators, of and from all and all manner of action and actions, cause and causes of action, suits, debts, dues, sums of money, accounts, reckonings, bonds, bills, specialties, covenants, contracts, controversies, agreements, promises, variances, trespasses, damages, judgments, extents, executions, claims and demands whatsoever, in law or equity, which against them or either of them I ever had, now have, or which my heirs, executors or administrators hereafter can, shall or may have, for, upon, or by reason of any matter, cause or thing whatsoever, from the beginning of the world to the day of the date of these presents, excepting a claim as to certain personal effects, consisting of books, clothes and pictures alleged by me to be in the possession of Ethel V. Ward or James H. Ward, and which belong to me.

"In witness whereof, I have hereunto set my hand and seal, the 13th day of March, one thousand nine hundred and three.

"WM. S. V. ALLEN [Seal].

"Sealed and delivered in presence of
"JOHN J. GRIFFIN."

The defendants further offered evidence that afterward a controversy arose between the plaintiff and his sister as to the ownership of certain articles of personal property, and that he thereupon gave Mr. and Mrs. Ward a paper, with a schedule attached, which paper read as follows :—

"To all to whom these presents shall come or may concern—Greeting : Know ye, that I, William Sullivant Allen, also known as William S. Vanderbilt Allen, for and in consideration of the receipt of the articles described in Schedule A, hereto annexed and made a part hereof, and one dollar, lawful money of the United States, to me in hand paid by James H. Ward and Ethelinda V. Ward, have remised, released and forever discharged, and by these presents do for myself, my heirs, executors and administrators, remise, release and forever discharge the said James H.

Ward and Ethelinda V. Ward and each of them, their and each of their heirs, executors and administrators of and from all and all manner of action and actions, cause and causes of action, suits, debts, dues, sums of money, accounts, reckonings, bonds, bills, specialties, covenants, contracts, controversies, agreements, premises, variances, trespasses, damages, judgments, extents, executions, claims, and demands whatsoever, in law or in equity, which against them or either of them I ever had, now have or which my heirs, executors or administrators hereafter can, shall or may have, for, upon, or by reason of any matter, cause or thing whatsoever, from the beginning of the world to the day of the date of these presents, excepting and excluding the following described articles belonging to me and which I assert are now in the possession of the said James H. Ward or Ethelinda V. Ward, or both of them : 1 silver-plated 'cocktail' shaker, 1 silver corkscrew, 1 pair silver wire-cutters, 1 silver pitcher, 1 glass pitcher, 1 glass decanter, 1 blue and white lamp, 2 silver spoons, 1 silver box, two or three statuettes.

" In witness whereof, I have hereunto set my hand and seal the 11th day of December, one thousand, nine hundred and three.

" W. S. V. ALLEN　[Seal].

" Sealed and delivered in presence of
　　" JESSIE V. DUIGNAN."

The defendants also offered evidence that Mrs. Ward delivered to the plaintiff all the articles described in said attached schedule, and also all the excepted articles named in the release ; and that all of these things took place before this suit was brought.

The releases were admitted in evidence, against the plaintiff's objections, which he stated as follows : " First, because it had not appeared that the said Mrs. Ward or her husband was a joint tort feasor with the defendant, in that the illegal confinement of the plaintiff was unknown to them and could not have been contemplated by them as

the probable result of their act in endeavoring to have the plaintiff removed from their house and restrained. Second, because it did not appear that this release was in fact given to discharge this particular cause of action. Third, because it did not appear that payment was made to the plaintiff, in the transaction on account of which this release was given, for the injury on account of which recovery was sought in this action."

The plaintiff was called as a witness by the defendants, and testified that he executed and delivered the releases. On cross-examination by his own counsel he was then asked if they were not given solely as the result of an accounting between him and his sister for certain moneys of his in her hands, and for the personal property described in them, and if it was not agreed by parol, when they were executed, that they should not include the cause of action on which the present action was predicated.

These questions were excluded, and so were similar ones subsequently put to him as a witness in rebuttal. Mrs. Ward having testified in defense that she held these releases, similar questions were put to her on cross-examination, and excluded.

Mr. and Mrs. Ward both testified that it was at their request that the plaintiff was restrained of his liberty in the sanitarium by the defendants, and no testimony in contradiction of this fact was offered by either party. The court thereupon directed a verdict for the defendants, under the third defense.

*John C. Chamberlain*, for the appellant (plaintiff).

*Stiles Judson* and *Harry R. Sherwood*, for the appellees (defendants).

BALDWIN, J. The third defense upon its face was sufficient. A release of one of several joint trespassers, given for a valuable consideration, is a release of all. *Ayer* v. *Ashmead*, 31 Conn. 447, 452.

Each of the releases received in evidence was admissible to support this defense, notwithstanding the objections taken by the plaintiff. They differed in date, and in the name of one of the releasees, from that alleged, but no point was made on account of either of these variances. So far as the first objection taken is concerned, although the releasees intended to secure only a legal restraint of the plaintiff, and did not know that he was confined without any legal commitment, this, if he was so confined, would not exonerate them from liability to him as wrongdoers. It also went, and each of the other objections likewise, to the effect to be given to the releases by the triers, and not to their admissibility.

The reply to the third defense, after traversing it in one paragraph, in a second pleaded in avoidance that if any release was given which in terms was broad enough to cover the present cause of action, it did not in fact relate to and was not intended to discharge it. The defendant rejoined by denying the second paragraph. Evidence to support it was therefore admissible, if the issue raised by the rejoinder was not a wholly immaterial one. *Adams* v. *Way*, 32 Conn. 160, 169. But it was wholly immaterial. No extrinsic evidence of this nature could avail to make the releases anything but what they appeared to be upon their face.

The execution and delivery of each produced instantaneously a certain legal effect, provided its terms were given their natural meaning. This result could not be varied by parol proof that the parties did not intend them to be so interpreted, or even expressly agreed that they should have no such effect. *Drake* v. *Starks*, 45 Conn. 96 ; *New Idea Pattern Co.* v. *Whelan*, 75 id. 455, 459, 53 Atl. 953. Each release was in its nature the final embodiment in written words of the agreement of the parties. Its dominant purpose was not to acknowledge the receipt of certain moneys or articles of property, but to state something done in consideration of their receipt. A receipt is evidence that an obligation has been discharged;

but a release is itself a discharge of it.   A discharge is a fact, which cannot be explained away, as against any one whose interests may have been affected by it.   The rule that written agreements cannot be varied by parol operates in favor of those not parties to the instrument as fully as in favor of those who were parties to it, whenever it was executed by the latter as the final embodiment of their agreement, and the parol evidence is offered to vary the legal effect of the terms in which it is expressed.   The only purpose of such evidence can then be to give a new and unwarranted character to a past act.   4 Wigm. on Ev., §§ 2425, 2432, 2446.

The defendants insist that they are to be regarded as in privity with Mr. and Mrs. Ward, by operation of law, and as such have more rights in opposing the introduction of parol evidence than if they were strangers to the release. See 1. Greenl. on Ev., §§ 189, 523 ; *Crandall* v. *Gallup*, 12 Conn. 365, 375.   We have no occasion to examine the validity of this claim, since even if regarded as strangers to it, their rights in that respect were, in our view, sufficient to justify the rulings of the trial court.

The plaintiff cites *O'Shea* v. *New York, Chicago & St. Louis R. Co.*, 105 Fed. Rep. 559, 561, 44 C. C. A. 601, in which, on a somewhat similar state of facts, a contrary conclusion was reached.   The reasoning of the opinion in that case has been criticised as confused by a recent writer of authority (4 Wigm. on Ev., § 2446), and it seems to us that the learned court may not have distinguished with sufficient clearness the right of a stranger to a written instrument to dispute the truth of its statements or recitals, from his right to dispute what is, as it reads, its effect in law.

Upon the execution and delivery of the first release, the liability of Mr. and Mrs. Ward for any unlawful confinement of the plaintiff previously procured by them, jointly or severally, was extinguished.   The instrument was under seal, and it was also in fact given for a sum of money actually received.   Whether this sum was large or small

was immaterial, since the demand extinguished was wholly unliquidated. It was enough that the plaintiff accepted $200 as a sufficient consideration for whatever he surrendered. *Bull* v. *Bull*, 43 Conn. 455, 469. That he did so accept it is incontrovertible from the language of the release. It is common to speak of the satisfaction of a claim, but the real meaning of the phrase is the satisfaction of the person who sets up the claim.

The undisputed evidence in the cause showed that, by their procurement, the plaintiff had been previously confined by the defendants, and that that confinement was the cause of action upon which he sued. The defendants had indeed offered evidence that the confinement was with the plaintiff's consent, but he claimed otherwise and produced evidence to the contrary. His whole case was that he had been wrongfully imprisoned. By procuring the imprisonment Mr. and Mrs. Ward became, if it was wrongful, joint tort feasors with the defendants, and equally responsible in damages to the plaintiff. The moment, therefore, that Mr. and Mrs. Ward were discharged from any claim of liability in this respect, the defendants were also discharged by operation of law.

It follows that the only proper course was pursued when the jury were directed to return a verdict in their favor. *McVeigh* v. *Ripley*, 77 Conn. 136, 141, 58 Atl. 701.

There is no error.

In this opinion the other judges concurred.