# CHARLES E. MARTIN AND ANOTHER v. GLADYS E. SETTER AND ANOTHER.[1]

November 20, 1931.

No. 28,339.

[1]Reported in 239 N. W. 219.

458

*D. L. Grannis* and *Albert Schaller,* for appellants.

*Sterling, Converse & Spence,* for respondents.

HOLT, J.

Plaintiffs appeal from a judgment rendered in defendants' favor for $8,845.19. There was a motion for a new trial which presented the questions now raised by the assignments of error. A brief statement of the main facts is necessary.

In August, 1925, defendant A. Milton Setter and plaintiffs entered into a tentative agreement to trade farms, Setter owning 1,600 acres in Canada with equipment of horses and machinery, and plaintiffs owning 360 acres partly in Dakota and partly in Scott counties, this state, with a dairy herd, horses, and machinery. In the deal one Denny was plaintiffs' agent, and one A. J. Rieger was agent of defendant Mr. Setter. Before the transaction was reduced to writing defendants married. After plaintiffs had seen the Canada farms and on September 3, 1925, the trade was consummated by the signing of another contract, Mrs. Setter not signing. Mr. Setter was to reduce the encumbrances on the Canada farms to a certain sum, was to pay overdue interest thereon and unpaid taxes, but was unable to do so; and on February 23, 1926, by a writing signed by all the parties to the suit, the contract of September 3, 1925, was modified, and moneys were advanced by plaintiffs to permit Setter to accomplish what he agreed to do. Plaintiffs were also directed to transfer the property to Mrs. Setter in place of Mr. Setter. The moneys advanced amounted to $5,932.94, for which defendants gave their note secured by mortgage

upon the property which they received. There was a default in the payment of this note, and this action was brought to obtain possession of the property in order to foreclose.

Defendants counterclaimed for $45,000 damages for alleged misrepresentations, chiefly as to the market value of the Dakota and Scott county farm and the feasibility of draining a pond thereon. There was a jury trial and a verdict rendered June 29, 1928, for $17,500 in favor of defendants.

Thereafter plaintiffs were permitted to interpose a supplemental reply, which pleaded as a defense to the counterclaim that defendants, after instituting an action to recover damages of their agent, A. J. Rieger, for the identical misrepresentations plaintiffs were charged with in this action, by which defendants were induced to trade properties with plaintiffs, settled said cause of action and dismissed it with prejudice and fully released Rieger from every liability growing out of the misrepresentations. In January, 1930, the cause came again for trial, and of course a different jury was impaneled to try the issue raised by the supplemental reply. The jury found in favor of the Setters. A motion for a new trial was made by plaintiffs alleging errors on both trials, including the contention that they were entitled to a directed verdict. The verdict was reduced to $7,500, a new trial was denied, and judgment entered. As we understand defendants, there was no defense to plaintiffs' cause of action unless defendants prevailed to some extent upon their claim for damages because of misrepresentations inducing the trade.

Since we have concluded that judgment notwithstanding the verdicts must be ordered for plaintiffs, it will not be necessary to consider assignments of error not determinative of that result. Plaintiffs at the conclusion of all the testimony moved for a directed verdict "on the ground that the release which has been introduced in evidence was conclusive that by releasing Mr. Rieger the plaintiffs in this case have been released." In this connection we must also consider the errors assigned upon the reception of parol evidence to vary or contradict the legal effect of the release.

There can be no question but that the tort for which defendants claimed damages was misrepresentations inducing the trade of the farms and equipment mentioned. Comparing the allegations of the answer in this action with the allegations of the complaint in the action against Rieger, in the settlement of which the release and stipulation for dismissal on the merits were given, there is no escape from the conclusion that the cause of action asserted by defendants was one and the same in both suits. Rieger and plaintiffs participated in the tort which caused the damages to defendants. Defendants do not question the authority of their attorneys to enter this stipulation with Rieger's attorney in the action brought against him:

"Whereas, the above entitled action has been settled and the defendant has, pursuant to the agreement of settlement, surrendered to the plaintiffs for cancellation, the note for Four Thousand Dollars ($4,000.00) set forth in paragraph Seven (7) of defendant's answer, and has also executed a release of the lien claimed by the defendant in his said answer:

"Now therefore, it is hereby stipulated, that the above entitled action may be and is hereby forthwith dismissed on its merits and with prejudice to each of the plaintiffs and to the defendant, but without the allowance of costs or disbursements to either party, and that judgment of dismissal in accordance with this stipulation may be entered either by the plaintiffs or the defendant at any time hereafter, if desired, without notice to the other party.

"Dated June 4, 1928."

This stipulation was signed by the attorneys of the respective parties.

In the release dated June 5, 1928, A. Milton Setter, after reciting the same consideration as in the stipulation, does "hereby remise, release and forever discharge the said Arthur James Rieger, his heirs, executors and administrators, of, and from all, and all manner of, action and actions, cause and causes of action, suits, debts, dues, sums of money, accounts, reckonings, bonds, bills, specialties,

covenants, contracts, controversies, agreements, promises, variances, trespasses, damages, judgments, extents, executions, claims and demands whatsoever, in law or in equity, which against the said Arthur James Rieger I, the said A. Milton Setter, ever had, now have, or which my heirs, executors or administrators hereafter can, or may have, by reason of any matter, cause or thing whatsoever from the beginning of the world to the day of the date of this release."

This was signed by A. Milton Setter and acknowledged on July 16, 1928. This stipulation and the release had been held by defendants' attorneys from their dates and had evidently been agreed upon by the attorneys of the respective parties. A few days after July 16, 1928, defendants' attorneys delivered them to Rieger's attorney and turned over to defendant the $4,000 note and the release of the property securing the same. No doubt by these instruments the cause of action defendants had or asserted against Rieger was settled and he was forever discharged. And it would follow that any other person whose acts caused or participated in the tort which damaged defendants was also discharged. Hartigan v. Dickson, 81 Minn. 284, 83 N. W. 1091; Borchardt v. Peoples Ice Co. 106 Minn. 134, 118 N. W. 359.; Almquist v. Wilcox, 115 Minn. 37, 131 N. W. 796; Davis v. Moses, 172 Minn. 171, 215 N. W. 225. That such is the law is not disputed by defendants; but defendants, over objections, were permitted to prove by Setter that he did not intend to settle or compromise his cause of action, but that what he received for the settlement and release from Rieger was to apply upon his cause of action against plaintiffs. Was parol evidence competent to vary or contradict these documents? This is the decisive and important question in the case.

This court, in common with courts of most every state and eminent text writers such as Chamberlayne, Greenleaf, Jones, and Wharton, has stated that "the parol evidence rule does not ordinarily apply between strangers to the instrument, or between a party and a stranger. 2 Dunnell, Minn. Dig. (2 ed. & Supp.) § 3396, and cases cited in note 75. But Dunnell also states that it does

apply "to a stranger who seeks to enforce rights based on the instrument." And in M. St. P. & S. S. M. Ry. Co. v. Home Ins. Co. 55 Minn. 236, 241, 56 N. W. 815, 816, 22 L. R. A. 390, referring to the rule first stated, it was said:

"The rule is as stated, with this limitation, however: that the right in the latter class of cases to vary a written contract by parol is limited to rights independent of the instrument. As to rights which originate in the relation established by the written contract, or are founded upon it, the rule against varying it by parol applies."

In the instant case the right to the defense asserted originated by law in the discharge of Rieger by virtue of the release. See also Lawton v. St. Paul P. L. Co. 56 Minn. 353, 57 N. W. 1061. In speaking of the rule against varying written contracts by parol this language, here applicable, is used in Current v. Muir, 99 Minn. 1, 3, 108 N. W. 870:

"As the document in the eye of the law is the contract between the parties, it must be accepted as final for the measurement and adjustment of all rights and obligations which rise out of it. Strangers to the contract may also be strangers to the relation created and controlled by it. But whoever comes within the purview of the relation cannot be permitted to vary or contradict the terms of the memorial which is the sole and final embodiment of the legal act. To this rule there are no exceptions."

Such is the inference also from Meyer v. Keating, 135 Minn. 25, 159 N. W. 1091; Germain v. G. N. Lbr. Co. 143 Minn. 311, 173 N. W. 667; Geiger v. Sanitary Farm Dairies, 146 Minn. 235, 178 N. W. 501. It seems clear that when for a consideration defendants settled and compromised their cause of action for damages against Rieger and the release was executed and delivered, it at once discharged not only Rieger but his joint tortfeasors, the plaintiffs, from the same cause of action pending against them; and parol evidence was inadmissible to vary the legal effect of that stipulation and release as to anyone already discharged thereunder. 5 Wigmore, Ev. (2 ed.) § 2446, states:

"It is commonly said that the parol evidence rule, in the present aspect, is binding upon only those persons who are parties to the document. This form of statement suffices in most instances to reach correct results; but it is not sound on principle. The theory of the rule is that the parties have determined that a particular document shall be made the sole embodiment of their legal act for certain legal purposes (ante § 2425). Hence, so far as that effect and those purposes are concerned, they must be found in that writing and nowhere else, no matter who may desire to avail himself of it. * * * The truth seems to be, then, that the rule will still apply to exclude extrinsic utterances, even as against other parties, provided it is sought to use those utterances for the very purpose for which the writing has superseded them as the legal act."

3 Jones, Ev. (2 ed.) § 1488, voices the same understanding of the rule in equally forceful manner. 2 Williston, Contracts, § 647, takes the same position, saying:

"But where the issue in dispute, even between third parties, is what are the obligations of A and B to one another, and those obligations are stated in a written contract, the parol evidence rule is applicable. The written contract represents the truth and the whole truth of the contractual obligations of A and B in whatever way and between whatever parties an inquiry as to such obligations may become important. To admit parol evidence to the contrary which would not be admitted as between the parties, except for the purpose of showing either fraud against the third person, or some invalidating facts which would be available to the parties themselves, is to permit facts to be shown which have no relevancy to the issue of what is the contract between A and B. * * *"

Then, after a reference to O'Shea v. N. Y. C. & St. L. R. Co. (C. C. A.) 105 F. 559; Johnson v. Von Scholley, 218 Mass. 454, 106 N. E. 17; McKim v. Metropolitan St. Ry. Co. 196 Mo. App. 544, 196 S. W. 433; Nashville Interurban Ry. v. Gregory, 137 Tenn. 422, 193 S. W. 1053, holding that the parol evidence rule is applicable only

to parties to the contract, the author says [2 Williston, Contracts, § 647, p. 1255]:

. "The error of such decisions is plain if we assume that the defendant instead of being a joint tort feasor was a surety jointly bound on a contract, the principal debtor of which was released or given time—a change which would make no difference in the application of the argument of the court."

The limitations of the parol evidence rule so clearly made by the eminent law professors have been tersely and forcefully set forth in Allen v. Ruland, 79 Conn. 405, 65 A. 138, 140, 118 A. S. R. 146, 8 Ann. Cas. 344. The releases there involved were in the exact terms of the one in suit. The defense pleaded and attempted to be proved to the release was that it was not intended to include the cause of action against the joint tortfeasors in the action on trial. The court, Judge Baldwin, however said [79 Conn. 411]:

"No extrinsic evidence of this nature could avail to make the releases anything but what they appeared to be upon their face. The execution and delivery of each produced instantaneously a certain legal effect, provided its terms were given their natural meaning. This result could not be varied by parol proof that the parties did not intend them to be so interpreted, 'or even expressly agreed that they should have no such effect. * * * Each release was in its nature the final embodiment in written words of the agreement of the parties. Its dominant purpose was not to acknowledge the receipt of certain moneys or articles of property, but to state something done in consideration of their receipt. A receipt is evidence that an obligation has been discharged; but a release is itself a discharge of it. A discharge is a fact, which cannot be explained away, as against anyone whose interests may have been affected by it. The rule that written agreements cannot be varied by parol operates in favor of those not parties to the instrument as fully as in favor of those who were parties to it, whenever it was executed by the latter as the final embodiment of their agreement, and the parol evidence is offered to vary the legal effect of the terms in which it is expressed. The only purpose of such evidence can then

be to give a new and unwarranted character to a past act. 4 Wigmore, Evidence, §§ 2425, 2432, 2446."

O'Shea v. N. Y. C. & St. L. R. Co. (C. C. A.) 105 F. 559, is disapproved. The reasons above given by Judge Baldwin are so convincing and seemingly conform to what was anticipated in M. St. P. & S. S. M. Ry. Co. v. Home Ins. Co. 55 Minn. 236, 56 N. W. 815, 816, 22 L. R. A. 390, and our subsequent cases based thereon, above cited, that we feel compelled to hold that the stipulation and release here pleaded discharged not only Rieger but also, at the moment they were delivered, plaintiffs for the same tort. There is no claim that fraud, deceit, mutual mistake, or any other ground exists for invalidating the stipulation or release. And there could not well be, for defendants' attorneys (not any of the attorneys who appear in this appeal) held the documents in their office for weeks, and their integrity and professional standing cannot be questioned. Other decisions of the same tenor as Allen v. Ruland, 79 Conn. 405, 65 A. 138, 118 A. S. R. 146, 8 Ann. Cas. 344, are Pugh v. Commr. of Int. Rev. (C. C. A.) 49 F. (2d) 76; D. & R. G. R. Co. v. Sullivan, 21 Colo. 302, 41 P. 501; Commercial Sav. Bank v. Colthurst, 195 Iowa, 1032, 188 N. W. 844, 191 N. W. 787; Gold v. Boston Elev. Ry. Co. 244 Mass. 144, 138 N. E. 251; Carpenter v. McElwain Co. 78 N. H. 118, 97 A. 560; Betcher v. Kunz, 112 Wash. 563, 192 P. 955; Natrona Power Co. v. Clark, 31 Wyo. 284, 225 P. 586.

As above intimated, 1 Greenleaf, Ev. (16 ed.) § 279, states that the parol evidence rule applies only in suits between parties to the instrument.

"It cannot affect third persons, who, if it were otherwise, might be prejudiced by things recited in the writings, contrary to the truth, through the ignorance, carelessness, or fraud of the parties; and who, therefore, ought not to be precluded from proving the truth, however contradictory to the written statements of others."

And 5 Chamberlayne, Modern Law of Evidence, § 3550, says:

"The rule, however, does not extend further in its operation so as to include strangers to the agreement. The latter will not be

considered as bound or prejudiced by what may be contained within the four corners of the instrument. In their case the parol evidence does not apply, but they will be permitted to go outside of the writing and show the exact transaction, even though the evidence offered may contradict the terms expressed."

A great number of decisions are cited to sustain the text; but on examination it will be found that in many correct results were reached without considering the limitations of the rule suggested by Wigmore and Williston or in Allen v. Ruland, 79 Conn. 405, 65 A. 138, 118 A. S. R. 146, 8 Ann. Cas. 344. In others the decision turned on the construction of ambiguous language or contradictory terms in the instrument—whether it amounted to a release or a mere covenant not to sue. Examples of such cases are Davis v. Moses, 172 Minn. 171, 215 N. W. 225; Joyce v. Massachusetts R. E. Co. 173 Minn. 310, 217 N. W. 337; Dwy v. Connecticut Co. 89 Conn. 74, 92 A. 883, L. R. A. 1915E, 800, Ann. Cas. 1918D, 270.

We may add that Johnson v. Von Scholley, 218 Mass. 454, 106 N. E. 17, and O'Neil v. National Oil Co. 231 Mass. 20, 120 N. E. 107, do not harmonize with Allen v. Ruland, 79 Conn. 405, 65 A. 138, 118 A. S. R. 146, 8 Ann. Cas. 344, and other cases above cited; but we think the latter accord better with the view expressed in M. St. P. & S. S. M. Ry. Co. v. Home Ins. Co. 55 Minn. 236, 56 N. W. 815, 22 L. R. A. 390, and the cases citing that opinion.

The stipulation and release in law disposed of defendants' cause of action against plaintiffs the moment they settled and released the same cause of action against the joint tortfeasor, Rieger, there being no claim of fraud, mutual mistake, or other good ground for invalidating or setting aside the stipulation and release. And in the absence of such grounds, parol evidence is inadmissible and incompetent to change the legal effect of the written instruments. That being so, the plaintiffs' motion for directed verdict in their favor for the relief demanded in the complaint should have been granted notwithstanding the verdicts for defendants.

The judgment in favor of defendants is reversed and the cause remanded with direction to render judgment for plaintiffs in conformity herewith.