HOUSING AND REDEVELOPMENT AUTHORITY IN AND FOR THE CITY OF MINNEAPOLIS v. FIRST AVENUE REALTY COMPANY, INC., AND OTHERS.
ARTHUR V. STEVENS, EXECUTOR OF ESTATE OF HARRY M. DRYER, APPELLANT.

133 N. W. (2d) 645.

February 19, 1965—No. 38,976.

---

*Halpern & Abrahamson, Samuel P. Halpern,* and *Joseph L. Abrahamson,* for appellant.

*Mackall, Crounse, Moore, Helmey & Holmes* and *Connor F. Schmid,* for respondent.

NELSON, JUSTICE.

Condemnation proceeding involving the Bijou Theater building,

which was situated in an older section of downtown Minneapolis known as the lower loop. The building's principal use was that of a moving picture theater, although it also housed an appliance store and barbershop. Commissioners appointed by the district court awarded $85,000 for the property, and both petitioner, the Housing and Redevelopment Authority, and respondent, Arthur V. Stevens, executor of the estate of Harry M. Dryer, deceased owner, appealed to the district court. A district court jury awarded the owner $72,000, whereupon said respondent appealed to this court from an order denying a motion for a new trial.

From a somewhat lengthy record it appears that the Bijou Theater building was erected in the 1890's to house opera. Over the years its use was altered to meet changing conditions, and, when condemned pursuant to proceedings instituted by petition, it was being used as a "grind" motion picture theater. The term "grind" refers to continuous daily showings of a particular movie beginning about 10 a. m. and culminating around 11:30 p. m. Admission price at the Bijou when last open was 25 cents per person, with a different double feature played each day.

The owner introduced two witnesses whose valuation of the property ranged from $160,000 to $217,409.36. Petitioner called three appraisers as witnesses whose valuations ranged from $55,000 to $60,000. From the record it appears that the jury's award of $72,000 was well within limits suggested by the conflicting expert opinion evidence when viewed and weighed in the light of all the circumstances.

Appellant's assignments of error concern the admission of the testimony of one Max R. Elkin, officer of the Elox Corporation, which was the lessee of the building. The lease was entered into some 18 to 19 months prior to commencement of the condemnation proceedings, and appellant introduced it in evidence to show the income derived from the property. Petitioner countered by introducing Elkin, who testified that as an officer of the Elox Corporation he negotiated the lease with the owner and that the owner had indicated to him that he wanted a lease which contained a high rental figure which he might display at the proper time to condemnation authorities but that the lessee need not

worry about the high rent for he would not be held to it. Appellant now asserts that admission of this evidence was error because it violated the parol evidence rule. Thus, the issue presented on this appeal is whether petitioner, a stranger to the contract, may, in a condemnation proceeding, introduce evidence which tends to show that a lease entered into by the owner of the condemned property was in part fictitious and therefore purposely entered into in some respects to bolster the value of the property.

1. It is clear that the income which was being derived from the property when subjected to legal condemnation is relevant. In Regents of University of Minnesota v. Irwin, 239 Minn. 42, 57 N. W. (2d) 625, we indicated that such evidence was admissible provided any fictitious or fanciful income was excluded.

In regard to the parol evidence rule, we concede it to be fundamental that oral evidence concerning discussions prior to or contemporaneous with the execution of a written instrument which varies the terms thereof is inadmissible.[1] The rationale behind the rule is that it insures stability and enforceability or a written contract.[2] Our concern in this case, however, is only to ascertain whether the rule is applicable to the situation arising by reason of appellant's introduction of the rental lease.

2. Appellant now argues that the parol evidence rule prohibited Elkin's testimony in regard to certain purposes of the lease because the rule encompasses situations where a stranger is attempting to prove facts inconsistent with the written contract. In support of this position, appellant cites Minneapolis, St. P. & S. S. M. Ry. Co. v. Home Ins. Co. 55 Minn. 236, 56 N. W. 815, 22 L. R. A. 390; Sayre v. Burdick, 47 Minn. 367, 50 N. W. 245; Lawton v. St. Paul Permanent Loan Co. 56 Minn. 353, 57 N. W. 1061; Geiger v. Sanitary Farm Dairies, 146 Minn. 235, 178 N. W. 501; Martin v. Setter, 184 Minn. 457, 239 N. W. 219, 80 A. L. R. 471. These cases do not hold what appellant suggests. They uniformly enunciate a rule consistently followed

---

[1] 7 Dunnell, Dig. (3 ed.) § 3368.

[2] Cargill Comm. Co. v. Swartwood, 159 Minn. 1, 198 N. W. 536; Henvit v. Keller, 218 Minn. 299, 15 N. W. (2d) 780.

by this court, which is that a stranger to a contract is not bound by the parol evidence rule unless the stranger seeks to enforce rights which are based on the instrument.[3] In the cases cited by respondent this court follows the above-mentioned rule and we therefore see no need to make further reference to them.

Getting back to the purpose of the parol evidence rule as applied here, it is clear that Elkin's testimony could not affect the enforceability of the lease. This proceeding was in no way concerned with its enforcement, nor was petitioner seeking to enforce rights under the lease. The effect of the testimony was merely to prove that the owner's motive in entering into the lease was to take advantage of the petitioner by bolstering the value through fictitious rental values and thereby constructively at least defrauding the public. Whether appellant actually entertained any such motives was a matter for the jury to determine in light of all facts and surrounding circumstances.

In Union Ry. Co. v. Hunton, 114 Tenn. 609, 88 S. W. 182, a case similar to the one before us, the Tennessee court indicated that the condemnor should be permitted to show the special circumstances under which the lease was effected which impaired its evidentiary effect as a true expression or indication of the value of the property.[4] We so hold in the case at bar.

It appears from the record that under the lease the Elox Corporation was compelled to make a $12,000 deposit with the owner to insure against rental payment failure. The termination of the lease was in-

---

[3]For more recent cases espousing this rule, see State, by Lord, v. Rust, 256 Minn. 246, 98 N. W. (2d) 271, and cases cited therein; Johnson v. Mugg, 261 Minn. 451, 113 N. W. (2d) 1.

[4]It is stated in Orgel, Valuation Under Eminent Domain, § 184: "The owners of property about to be condemned have sometimes been under suspicion of making collusive leases bearing high rent charges in the hope of influencing the award. A condemner who can show adequate grounds for this suspicion may insist that the testimony be excluded, and refusal to permit him to prove this contention has been held ground for reversal."

In line with this statement are Seattle & Montana Ry. Co. v. Roeder, 30 Wash. 244, 70 P. 498; Levenson v. Boston Elevated Ry. Co. 191 Mass. 75, 77 N. E. 635; Sifuentes v. United States (1 Cir.) 168 F. (2d) 264.

troduced into evidence and it contained a recital that the lessee was entitled to a return of $7,550. Elkin testified under cross-examination that that amount had been paid to the Elox Corporation. Appellant then sought to introduce a proof of claim in the amount of $7,550 which had been filed with the probate court against the lessor-owner's estate. The trial court refused admission of the claim, and appellant has assigned this as error.

The underlying reason for appellant's attempt to introduce the proof of claim stems from Elkin's testimony that the owner had desired a lease with a high rental figure. Appellant became concerned that the jurors may have inferred fraudulent conduct on the owner's part. If the jurors at any time drew such an inference it must have been dispelled by appellant's cross-examination of Elkin. The offer in evidence of the proof of claim was intended by appellant to disprove any inference of fraud on the part of the owner since the amount of the claim had been limited to that due from the deposit balance. The introduction of the proof of claim, however, could serve no useful function and was merely cumulative. We think the trial court properly rejected it.

3. Appellant next suggests that Elkin was incompetent to give expert opinion testimony as to the rental value of the Bijou Theater. In Carmody v. Aho, 251 Minn. 19, 23, 86 N. W. (2d) 692, 695, we said:

"* * * As a general rule, the preliminary question whether a witness has the necessary qualifications to testify as an expert is left to the sound discretion of the trial court. * * *

\* \* \* \* \*

"In the first place, the opinion of expert witnesses is intended to be used only where, because of superior learning or experience, the witness is more capable of formulating a correct opinion on the subject matter involved than are the members of the jury."

In this case, Elkin and his father managed the Bijou Theater during the 2-year period preceding condemnation. Previous to this he had been involved over a period of some 10 years in the operation and management of the nearby, similarly used, Crystal and Loop Theaters. The Loop, Crystal, and Bijou Theaters were the only "grind" houses

in Minneapolis except for the Palace Theater, which was torn down in early 1950, and the slightly higher priced Aster Theater, which commenced a "grind" operation in about 1954. He had negotiated for the purchase of the existing leases on both the Loop and Crystal Theaters and had entered into unsuccessful negotiations for a new lease on the Loop after expiration of the old lease. He had negotiated for an oral month-to-month lease of the Agate Theater in Minneapolis and participated in its operation and management for the better part of a year. It can hardly be said that the trial court abused its discretion when it permitted Elkin to give his opinion as to what he felt the proper rental value to be.[5]

Appellant next alleges that the court erred when it permitted Elkin to testify as to the maximum single day's attendance during the 2 years the Elox Corporation operated the Bijou Theater. The crux of Elkin's testimony was that the theater was larger than necessary. This testimony bore on the issue of the functional obsolescence of the property and it further tended to refute one of appellant's witnesses who indicated that the property suffered relatively little functional obsolescence.

In light of the court's statement that it would allow the witness to state only the actual number of seats used, and its cautionary remark to the jury that someone else might be more successful and the success of the Elox Corporation's business was not being tried, we conclude that the court did not err when it permitted such testimony.[6]

4. Appellant's expert witness, Jacob J. Liebenberg, compiled schedules which contained the costs of reproduction of the condemned structure. From the reproduction costs he subtracted depreciation. The contents of the schedule was fully covered on direct examination of Liebenberg. We approved the admission of similar testimony in State, by Lord, v. Red Wing Laundry & Dry Cleaning Co. 253 Minn. 570, 93 N. W. (2d) 206, holding that it may be of aid to the jury in arriving at the market value of the property. At the conclusion of

---

[5]In connection with opinion evidence, see Annotation, 159 A. L. R. 7, 26; Tysk v. Griggs, 253 Minn. 86, 91 N. W. (2d) 127.

[6]King v. Minneapolis Union Ry. Co. 32 Minn. 224, 20 N. W. 135.

direct examination of Liebenberg, appellant's counsel sought to introduce the schedule showing reproduction costs less depreciation. Objection to its admission was sustained. Appellant assigns the court's refusal as error, relying on State, by Lord, v. Red Wing Laundry & Dry Cleaning Co. *supra,* to sustain his position. We did not say in the Red Wing Laundry case that the exhibit itself was admissible. We there merely approved of the proposition that reproduction costs, less depreciation and obsolescence, are admissible in a condemnation case. *The schedules used by Liebenberg were in effect memoranda.* We cannot determine from the record to what degree he relied upon them while testifying, but we have reason to infer that he had them before him while testifying and we think it safe to say that he used them to refresh his memory. As to the introduction of memoranda as evidence, this court follows the majority rule,[7] which is that memoranda offered which are used to revive present recollections are not admissible into evidence.[8] This court recognizes exceptions to that rule, but those are not pertinent to this case.[9]

In the instant case, the trial court gave appellant full opportunity to cover all material contained in the excluded schedule, and there is nothing to indicate that he did not take advantage of it. At the outset of the trial the jurors were furnished pencil and paper, and they were therefore in a position to record pertinent figures. In a case of this nature each party's expert witnesses must come to court armed with schedules from which they may enunciate their opinions as to the property's market value. If a trial court is to permit the introduction of some of these schedules as exhibits and exclude others, the parties whose exhibits are excluded would suffer prejudice, for during deliberation the jurors may place undue emphasis upon the written reports which are before them. The admission of such evidence is within the sound discretion of the trial court, and it did not abuse its discretion here.

---

[7]Annotation, 82 A. L. R. (2d) 473, 512.

[8]State, by Lord, v. Winiecki, 263 Minn. 86, 115 N. W. (2d) 724; In re Estate of Ylijarvi, 186 Minn. 288, 243 N. W. 103.

[9]Sullivan v. Minneapolis St. Ry. Co. 161 Minn. 45, 200 N. W. 922.

5. While appellant in his motion for a new trial stated one of his grounds to be that insufficient damages appear to have been given under the influence of passion and prejudice, this ground has been omitted from the assignment of errors in appellant's brief, where he merely states as his last assignment that the court erred in denying the motion for a new trial. The record, however, fails to show anything to indicate that the jury was influenced or motivated by passion or prejudice. We are confronted in the record with a conflict between experts on value, with a jury adopting a figure somewhere between the two sets of expert witnesses. The petitioner as the prevailing party below is entitled to the benefit of the rule that we view the evidence in the aspect most favorable to the jury's verdict. Viewing the record as a whole, we deem it clear that different persons might reasonably draw different conclusions from the evidence and that the verdict therefore ought not to be disturbed.

6. We have frequently said that a new trial should not be granted upon conflicting evidence unless the verdict is so manifestly contrary to the preponderance of the evidence as to warrant the inference that the jury failed to consider all the evidence or acted upon some mistake or from some improper motive, bias, feeling, or caprice, instead of dispassionately and honestly exercising their judgment upon all the evidence. Clearly, the conflict in the expert opinion testimony as to value was for the jury to resolve.

In State, by Lord, v. Frisby, 260 Minn. 70, 74, 108 N. W. (2d) 769, 772, this court, although conceding the verdict in that instance to be conservative, said:

"* * * it is not for this court to say that it is so disproportionate as to be partial and unfair. The question of damages is essentially one of fact for the jury to determine. Moreover, the trial court who heard the evidence and arguments of counsel on motion for a new trial with reference to the question of damages has determined that there is no such disparity between the award and the demonstrated damage, as evidenced by the record, which would warrant setting it aside as inadequate. An appellate court should not substitute its own judgment for

that of the jury, even where we are of the view that the evidence submitted would justify a substantially larger verdict."

7. It has long been the rule in this state that opinion testimony as to value is not binding upon the jury; that opinions of expert witnesses are only advisory and the jury may weigh such evidence in the light of all the facts and opinions presented to it and draw its own conclusions. State, by Lord, v. Shirk, 253 Minn. 291, 91 N. W. (2d) 437.

The verdict herein has been approved by the trial judge, who heard the witnesses and the evidence during the progress of the trial. We see no basis, therefore, for concluding that the court abused its discretion or committed prejudicial error. When the record is viewed as a whole it becomes clear that the issues herein were for the jury, and we hold that the testimony was ample to support the verdict and that the lower court did not abuse its discretion in denying appellant's motion for a new trial. See, State, by Lord, v. Pearson, 260 Minn. 477, 110 N. W. (2d) 206; Brewitz v. City of St. Paul, 256 Minn. 525, 99 N. W. (2d) 456.

Affirmed.