[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION RE: PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT (120.00, 126.00)
The plaintiff Kazlon Communications (Kazlon) instituted this action seeking to collect the unpaid balance of a promissory note dated March 28, 2001 executed by the defendants, The American Golfer, Inc. (American Golfer) and Ian M. Davis. The alleged unpaid principal balance is $30,000. The defendants admitted the making of the note and pleaded a special defense of failure of consideration for the note. The defendants have also alleged, in a counterclaim, that Kazlon has converted certain property of American Golfer.
The plaintiff has moved for summary judgment on its complaint and the defendants' counterclaim (120.00) and the defendants have filed affidavits and memoranda of law opposing the motion.[1]
 Background Facts
The genesis of the dispute arises from the provision of certain services and processes by a predecessor entity of Kazlon to American Golfer in connection with two books about golf published by the latter. These services included color separation of both color and black and white photographs and reducing the resulting information to electronic data.[2] A dispute about billing for these services arose and at least three lawsuits were filed in the Superior Court. These litigations were purportedly settled in March of 2001. At that time, mutual releases and a promissory note payable to Kazlon were executed.
The promissory note payable to Kazlon and made by American Golfer and Davis called for a total payment of $70,000: $10,000 on April 1, 2001 and payments of $30,000 on July 1 and October 1, 2001. In the release American Golfer and Davis released Kazlon, its predecessor and others
 (the "RELEASES") and their members, organizers, CT Page 1731 affiliates, successors, assigns, parents and divisions, officers and directors, employees, representatives, and attorneys of and from any and all manner of action and actions, cause and causes of action, suits, torts, debts, dues, sums of money, accounts, reckoning, bonds, bills, specialities, covenants, contracts, deeds, liens, controversies, agreements, promises, variances, trespasses, damages, judgments, extents, executions, claims and demands whatsoever in law or in equity, which, against the said RELEASES said RELEASORS ever had, now have or which they or their affiliates, successors, assigns, parents and divisions, officers and directors, employees, representatives, heirs and attorneys hereafter can, shall or may have for, upon or by reason of any matter, cause or thing whatsoever from the beginning of the world to the date of this Release and, more particularly, Releasors hereby release Releasees from all claims or causes of action which were or could have been asserted in the following civil actions pending before the Connecticut Superior Court, Judicial District of Middletown, entitled The American Golfer, Inc. vs. Sabot Publishing, Inc., et al, bearing docket number CV01-0094213S, Kazlon Communications, LLC vs. The American Golfer, Inc., et al, bearing docket number CV00-0093737 S and The Gartlinghouse Company d/b/a Graphic Productions vs. The American Golfer, Inc., et al, bearing the docket number CV98-0086402.
When it was initially produced it is undisputed that the electronic data was delivered to American Golfer or its agent and the two golf books were published. For reasons not entirely clear, a copy of the electronic data developed by Graphic Productions is not in the possession of American Golfer, but a copy was retained by Graphic Productions and was eventually transferred with other assets to Kazlon in 1999. That copy of the electronic data has either been lost or discarded by Kazlon, according to representations made by Kazlon's counsel at oral argument.
 The Parties' Contentions
Kazlon argues that the material facts pertinent to its claim that American Golfer and Davis have failed to pay the remaining balance of CT Page 1732 $30,000 are undisputed, and it is entitled to judgment for the unpaid principle and interest However, American Golfer contends, by means of its special defense and counterclaim, that Kazlon's failure to turn over the copy of the electronic data it retained is (1) a failure of consideration for the note and (2) constitutes conversion. In turn, Kazlon asserts that the promissory note and release signed by the defendants American Golfers bars any claim for conversion of electronic data and eliminates any defense based on an alleged failure of consideration.
 Additional Facts
American Golfer and Davis have offered the following factual allegations in affidavit form. Davis, an officer of American Golfer, states that the electronic data is "the intellectual and physical property of . . . American Golfer", and that the issue of conversion of the electronic data by Kazlon never arose in those lawsuits. He further states that neither he nor American Golfer had demanded return of the electronic data when the note and release were signed in March 2001. Davis Affidavit, June 18, 2002.
The Davis June 18, 2002 affidavit continues to the effect that, subsequent to March 2001, Davis demanded that Kazlon turn over the electronic data which was not done. Davis estimates the cost of recreating the electronic data at about $70,000. Finally, Davis states that in signing the release and notes, he "only intended on reaching a resolution as to the claims related to the billings by Graphic Productions for the services performed as to the books . . . I always intended to obtain the electronic data which is the property of . . . American Golfer . . . and did not agree to waive any rights as to the valuable and necessary electronic data". Id.
In a later affidavit Gold added:
 Had I known that the electronic data for The 25 Greatest Achievements in Golf had been destroyed, discarded or otherwise disposed of by the Plaintiff, at the time the release and note were signed, I would not have signed the note and release.
 Had I believed that the Plaintiff intended to be released from any claims of converting, discarding or disposing of the valuable electronic data, I never would have signed the release.
Davis Affidavit, September 24, 2002. CT Page 1733
The defendants also offer the affidavit of William Black a veteran of book publishing, and specifically, golf book publishing. Black's affidavit states that he is familiar with the standards of the book publishing industry including the standards for companies performing color separation services. Black's affidavit says:
 It is the industry standard that a company performing color separation services and reducing said information into electronic data to maintain the data until notice is given to the customer, that they no longer intend to maintain the data.
Black states that the destruction or disposal by Kazlon of the electronic data and the failure of Kazlon to notify American Golfer of its intent to dispose of the electronic data, violated industry standards.
 The Standard For Summary Judgment
Summary judgment is appropriate when there is no genuine issue as to any material fact, and upon those facts, the moving party is entitled to judgment as a matter of law. Practice Book § 17-49.
 In deciding a motion for summary judgment, the trial court must view the evidence in the light most favorable to the nonmoving party. . . . The party moving for summary judgment has the burden of showing the absence of any genuine issue of material fact and that the party is, therefore, entitled to judgment as a matter of law. . . .
Gold v. Greenwich Hospital Association, 262 Conn. 248 (2002).
At the outset, the court notes that there is no real dispute that American Golfer and Davis have defaulted on the last payment of $30,000 due Kazlon under the March 2001 settlement agreement. This is established by portions of the affidavits of O'Sullivan and Garlinghouse which are uncontradicted.
In determining the remaining issues, the court must first focus on the contention of the special defense pleaded by American Golfer and Davis that the failure of Kazlon to turn over the electronic data constitutes a failure of consideration for the note. This argument, however, is belied by the language of the note itself. In paragraph 12 thereof, it is stated that the note is given in connection with the settlement of the three CT Page 1734 civil suits. In paragraph 13 the note states that the obligations thereunder arise and become binding on American Golfer and Davis upon their receipt of a release from Kazlon and others. Paragraph 13 also states that all claims that American Golfer on Davis could have asserted in the settled litigation are waived and "shall not be asserted as a defense" to the note. Finally, the first sentence of the note states "[f]or value received" American Golfer and Davis promise to pay $70,000. In none of these recitations is there any mention that the provision of the electronic data was part of the consideration for the obligations undertaken in the note. To the contrary, the consideration was the settlement of the lawsuits and the release of claims by Kazlon and others and this is evidenced by American Golfer's and Davis' recitation that they had "received" (past tense) the consideration. Therefore, the court finds that the undisputed facts support the plaintiffs complaint for the unpaid principal and interest of the note and fail to support the special defense.[3]
Turning now to the defendants' counterclaim, their first contention is that they did not intend the settlement agreement and release to cover the issue of the status of the electronic data. In the words of Davis, he did not intend "to waive any rights" with respect to the electronic data. Kazlon, on the other hand, contends that the language of the release is unambiguous and should be interpreted in accordance with the words employed, and that the words of the release bar the claim of conversion.
As a general rule, the intent of the parties to a written instrument should control its interpretation. Almost a hundred years ago the Connecticut Supreme Court dealt with the contention that a release was not intended to discharge an obligation.
 No extrinsic evidence of this nature could avail to make the releases anything but that which they appeared to be upon their face. The execution and delivery of each produced instantaneously a certain legal effect, provided its terms where given their natural meaning. This result could not be varied by parol proof that the parties did not intend them to be so interpreted, or even expressly agreed that they should have no such effect. Drake v. Starks, 45 Conn. 96; New Idea Pattern Co. v. Whelan, 75 Conn. 455, 459, 53 A. 953. Each release was in its nature the final embodiment in written words of the agreement of the parties. Its dominant purpose was not to acknowledge the receipt of certain moneys or articles of CT Page 1735 property, but to state something done in consideration of their receipt. A receipt is evidence that an obligation has been discharged; but a release is itself a discharge of it. A discharge is a fact, which cannot be explained away, as against any one whose interests may have been affected by it. The rule that written agreements cannot be varied by parol operates in favor of those who were parties to it, whenever it was executed by the latter as the final embodiment of their agreement, and the parol evidence is offered to vary the legal effect of the terms in which it is expressed. The only purpose of such evidence can then be to give a new and unwarranted character to a past act. 4 Wigmore on Evidence, §§ 2425, 2432, 2446.
Allen v. Ruland, 79 Conn. 405, 65 A. 138, 140 (1906). More recently, our Supreme Court has articulated the point in this fashion.
 A contract must be construed to effectuate the intent of the parties, which is "determined from the language used interpreted in the light of the situation of the parties and the circumstances connected with the transaction. . . . [T]he intent of the parties is to be ascertained by a fair and reasonable construction of the written words and . . . the language used must be accorded its common, natural, and ordinary meaning and usage where it can be sensibly applied to the subject matter of the contract. . . . Where the language of the contract is clear and unambiguous, the contract is to be given effect according to its terms. A court will not torture words to import ambiguity where the ordinary meaning leaves no room for ambiguity. . . . Similarly, any ambiguity in a contract must emanate from the language used in the contract rather than from one party's subjective perception of the terms. . . .
Lawson v. Whitey's Frame Shop, 241 Conn. 678, 686 (1997) [quoting from24 Leggett Street Ltd. Partnership v. Beacon Industries, Inc., 239 Conn. 284,295 (1996)]. From this analysis the Connecticut Supreme Court has drawn the following conclusion.
 Although ordinarily the question of contract interpretation, being a question of the parties' CT Page 1736 intent, is a question of fact . . . [w]here there is definitive contract language, the determination of what the parties intended by their contractual commitments is a question of law . . .
Pesino v. Atlantic Bank of New York, 244 Conn. 85, 92 (1998) [quoting from Levine v. Massey, 232 Conn. 272, 277 (1995)].
Based on the foregoing, this court finds that the language of the release at issue is quite clear and not ambiguous. The court also notes that the parties negotiating and agreeing on the release were commercial entities or officers thereof and represented by counsel. The court finds that the presumption of definitiveness arising from these circumstances has not been rebutted, and therefore, the evidence proffered as to intent must be disregarded. Tallmadge Brothers, Inc. v. Iroquios GasTransmission System, L.P., 252 Conn. 479, 496-497 (2000).
With the above in mind, the court reviews the defendants' counterclaim that Kazlon converted American Golfer's property. This claim is based on the assertion, not admitted by Kazlon, that the copy of electronic data was the property of American Golfer which Kazlon has refused or failed to turn over. American Golfer contends that the conversion did not occur until after the note and release were executed in March 2001. Specifically, the Davis affidavit states that "[a]fter March, 2001, I made demand for the delivery to me of the electronic data." Davis affidavit (June 18, 2002) ¶ 12. American Golfer contends that Kazlon's conversion of the electronic data did not occur until Davis' demand went unfulfilled, and since this arose after the release was executed, it is not barred by the release. Conversion occurs when, without authorization, one party exercises ownership over the property of another. Wellington Systems, Inc. v. Redding Group, Inc.,49 Conn. App. 152, 169 (1998). The defendants contend that until the demand was made, Kazlon's possession of the electronic data was authorized because it was the custom of the industry for the color separation business to retain the electronic data.
The argument has a certain appeal, but on closer examination, it cannot stand. Assuming the facts as stated by American Golfer and Davis, i.e. that the electronic data was American Golfer's property, then it could have made a demand on Kazlon or Graphic Productions for the return of property at any time after it came into existence, including before March 2001. The right to make that demand existed both before the release was executed and at the time of execution. Furthermore, the claim of conversion arose from the very state of affairs, that the electronic data was in the possession of Kazlon, which existed prior to the release. CT Page 1737 Thus, the court finds that the defendants' release of any
 claims and demands whatsoever in law or in equity which . . . [the defendants] . . . ever had [against Kazlon or hereafter] . . . can, shall or may have for, upon or by reason of any matter, cause or thing whatsoever from the beginning of the world to the date of the release
bars the making of the demand by the defendants and hence their claim for conversion.
The above conclusion, while seemingly harsh, is consistent with the undisputed facts. The electronic data was at the heart of the multi-layered disputes between Kazlon and American Golfer. Its creation was requested, and the cost thereof was disputed, by the defendants giving rise to multiple claims and counterclaims by the parties of alleging fraud, breach of contract, unfair trade practices, etc. It is undisputed that the defendants knew that the electronic data was in the possession of Kazlon or its predecessor. The parties meticulously prepared an agreement, note and release. In the words of the Connecticut Supreme Court, "[i]t is well-nigh impossible to imagine a more all encompassing release". Tallmadge Brothers, Inc. v. Droquois Gas Transmission System,L.P., supra 252 Conn. 479, 499.[4] The language of the release clearly envinces an intention to resolve all disputes or potential disputes in the Kazlon et al — American Golfer, Davis relationship. If the defendants had any claims against Kazlon it wished to preserve, the time of negotiating and executing the release and agreement was the time to bring them up for resolution. Having released all possible claims against Kazlon that might have been available on the facts then existing, the defendants released
their claim for the electronic data.
 Damages
The unpaid principal of $30,000 carries with it an interest rate of twelve percent (12%) annually. Additionally, the American Golfer and Davis agreed to pay "all reasonable and necessary costs, expenses and attorney's fees incurred" in collection of the debt. Interest as of the date of this decision amounts to $4,714.52.
Kazlon also seeks interest on an allegedly late payment of an earlier installment of the note. However, this was not alleged in the complaint. CT Page 1738
Kazlon has offered evidence of attorneys fees and expenses associated with this case. The court finds that these are $17,925.42.
 Conclusion
The court determines that Kazlon is entitled to summary judgment on its complaint and summary judgment dismissing the defendants' counterclaim. On the basis of the foregoing, judgment may enter in favor of Kazlon for $52,639.99, plus allowable costs.
 _____________________ TAGGART D. ADAMS SUPERIOR COURT JUDGE